Robert SCHISLER, Mary Miceli, Paulette Beard, Frank Powroznik, Rose Reese, Harry Delandro, Marjorie Hilts, Cinda Coleman, Rose Mitchell, and Kathran Tennant, on behalf of themselves and all other individuals similarly situated, Plaintiffs-Appellees-Cross-Appellants,

v.

Margaret HECKLER, Secretary of the U.S. Department of Health and Human Services; Barbara Blum, as Commissioner of the New York State Department of Social Services; Sidney Houben, as Director of the New York State Department of Social Services Bureau of Disability Determinations, Defendants,

Margaret Heckler, Secretary of the U.S. Department of Health and Human Services, Defendant-Appellant-Cross-Appellee.

Nos. 1536, 1569, Dockets 85–6092, 85–6096.

United States Court of Appeals, Second Circuit.

Argued Aug. 14, 1985.

Decided April 2, 1986.

Frank A. Rosenfeld, Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Salvatore R. Martoche, U.S. Atty., W.D.N.Y., William Kanter, Atty., Civil Div., Appellate Staff, Dept. of Justice, Washington, D.C., of counsel), for defendant-appellant-cross-appellee.

Lewis Golinker, New York Lawyers for Public Interest, New York City (Bryan D. Hetherington, Catherine M. Callery, Monroe County Legal Assistance Corp., Rochester, N.Y., and Olney Clowe, Neighborhood Legal Services, Buffalo, N.Y., of

counsel), for plaintiffs-appellees-cross-appellants.

Robert Abrams, Atty. Gen. of State of N.Y., for amicus curiae State of N.Y.

Before NEWMAN and WINTER, Circuit Judges, and COFFRIN, District Judge.[*]

WINTER, Circuit Judge:

On this appeal from a judgment in favor of a class of claimants for disability benefits, the Secretary of Health and Human Services ("the Secretary") seeks review of Judge Elfvin's decision establishing as members of the class eligible for relief all Social Security disability recipients whose benefits were terminated by the Social Security Administration ("SSA") on or after June 1, 1976 under the so-called "current disability" standard. SSA challenges the inclusion of the portion of the class of disability claimants terminated between June 1, 1976 and May 11, 1980 ("contested group"), which is estimated to contain approximately 13,000 people. Plaintiffs cross-appeal on two issues. First, they seek an injunction requiring the Secretary to apply the "treating physician" rule of this court to members of the class upon remand. Second, they seek an injunction mandating improved notice to all members of the class. We affirm the district court's decision including the contested group within the class. We reverse as to both issues on the cross-appeal and remand for further proceedings.

## BACKGROUND

This class action was brought on July 11, 1980, to challenge a widespread termination of disability benefits for recipients who had previously been declared eligible under the Social Security Disability Insurance program, 42 U.S.C.A. § 401 et seq. (1982 & Supp.1985) and the Supplemental Security Income ("SSI") program, 42 U.S.C.A. § 1381 et seq. (1982 & Supp.1985). The plaintiffs' central claim was that SSA

had unlawfully altered the legal standard for terminating the benefits of claimants.

Until June, 1976, SSA had evaluated terminations under a "medical improvement" standard. This standard barred termination of recipients absent medical evidence demonstrating an improvement of a claimant's medical condition subsequent to the original determination of disability. In June, 1976, without relevant statutory change, SSA issued orders to its adjudicators to apply a stricter "current disability" standard. This new standard allowed termination whenever a recipient could not produce substantial evidence of continuing disability whether or not there was evidence of actual medical improvement. The scrutiny of particular recipients was also intensified but, in this instance, pursuant to legislative mandate. Social Security Disability Amendments of 1980, Pub.L. No. 96–265, § 311(a), 94 Stat. 441, 460 (1980). Prior to March, 1981, Continuing Disability Investigations ("CDIs") were performed only in certain categories of disability cases considered by SSA to be most likely to result in terminations. After that date, SSA implemented the Social Security Amendments of 1980, which required CDIs at least once every three years for most claimants. 42 U.S.C. § 421(i) (1982) amended by Pub.L. No. 98–460, §§ 6(a), 8(a), 98 Stat. 1794, 1802, 1804 (1984) (codified at 42 U.S.C.A. § 421(h)(i) (Supp.1985)).

The combination of the "current disability" standard and the greatly increased number of CDIs led to a dramatic increase in the number of terminations. More than 470,000 people had their disability benefits terminated in the three years after March, 1981, N.Y. Times, Mar. 24, 1984, at 1, col. 6, resulting in a flurry of class-actions, including the present one, challenging the termination process. See De Leon v. Secretary of Health & Human Services, 734 F.2d 930, 931 n. 1 (2d Cir.1984).

The ten named plaintiffs were disability recipients whose cases had been reviewed

---

[*] The Hon. Albert W. Coffrin, Chief Judge, United States District Court for the District of Vermont, sitting by designation.

for termination by the State between March, 1979 and April, 1980. In August, 1981, Judge Elfvin certified a 23(b)(2) class under Rule 23(b)(2), Fed.R.Civ.P., consisting of "all persons" in New York State whose disability benefits were terminated without consideration of medical improvement. Proceedings continued, with much of the parties' attention devoted to whether an injunction should issue concerning the subclass of mentally disabled claimants. *Schisler v. Heckler*, 574 F.Supp. 1538 (W.D.N.Y.1983).

On October 9, 1984, Congress passed the Social Security Disability Benefits Reform Act of 1984 (the "Reform Act"), Pub.L. No. 98–460, 98 Stat. 1794 (1984). The Reform Act was intended generally to resolve the controversy concerning the standard for termination decisions and to resolve the host of lawsuits that had been spawned by that controversy. Because the Reform Act codified the "medical improvement" standard for all future termination hearings, *see* Reform Act § 2(c), (d)(2)(A), Pub.L. No. 98–460, § 2(c), (d)(2)(A), 98 Stat. 1794, 1796–97 (1984) (§ 2(c) codified at 42 U.S. C.A. § 1382c(a)(5) (Supp.1985)), issues with respect to terminations were reduced in the present case to determining the retrospective effect of the Act on those already terminated.

In light of the Reform Act, the district court ruled on both parties' pending motions for summary judgment. In a judgment entered on December 5, 1984, 107 F.R.D. 609, the district court rejected SSA's request to define the class to include less than "all persons" affected by the policy. It also rejected SSA's argument that the court had no jurisdiction over class members who were terminated before May, 1980. The court ordered that class members' termination decisions be expeditiously remanded to the Secretary and readjudicated there under the "medical improvement" standard. Interim benefits under § 2(e) of the Reform Act, Pub.L. No. 98–460, § 2(e), 98 Stat. 1794, 1798 (1984), would be available for those class members who requested them.

Subsequently, both parties moved to amend the judgment. SSA again sought to reduce the class size. Plaintiffs sought injunctive relief mandating SSA compliance with this Circuit's "treating physician" rule, discussed *infra*. Plaintiffs also sought an order compelling the Secretary to provide the names and addresses of class members whose notices of the right to readjudication would in the future be returned to SSA as "addresses unknown", as well as the names and addresses of those class members who failed to respond. These motions were denied. Subsequent to the district court's decision, SSA sent out a notice of the right of readjudication to members of the uncontested class.

SSA appealed from the decision defining the class as including the contested group. Plaintiffs cross-appealed from the denial of the injunction with regard to the treating physician rule and from the district court's failure to grant their requests with regard to the provision of names and addresses. They also challenged the adequacy of the notice that was sent by SSA after the district court's decision. SSA then sought a stay pending appeal with regard to the remand of the contested group. On May 21, 1985, we granted a stay to be effective only upon SSA's agreeing to two conditions. The first condition entailed "a protective notice of election ... for all class members whose termination or final administrative appeal decision was issued prior to May 11, 1980, who following written notice by the Secretary, make a timely request for restored benefits," thereby ensuring that reinstated benefits would not be affected by the period of the stay. The second condition required the Secretary to transfer certain computer tapes to the State of New York within fourteen days, in order to update the SSA address list with the more complete state address list. SSA agreed to these conditions.

## DISCUSSION

We discuss the scope of the class, treating physician, and notice issues seriatim.

1) *The Scope of the Certified Class*

The Social Security Act by its terms bars appeals from denials of disability benefits more than sixty days after mailing of the final decision of termination. 42 U.S.C. § 405(g) (1982). Claimants who were terminated after May 11, 1980, (i.e., within sixty days before the filing of this action), are conceded by the SSA to be eligible for remand for a readjudication of their claims.

Section 2(d)(3)(B) of the Reform Act, Pub.L. No. 98–460, § 2(d)(3)(B), 98 Stat. 1794, 1798 (1984), also mandates remand to the Secretary of any claimant

who was a member of a class certified on or before September 19, 1984, in a class action relating to medical improvement pending on September 19, 1984, but was not identified by name as a member of the class on such date.

SSA concedes that the effect of this provision is to waive the jurisdictional requirements of Section 405(g) as to any claimant who is a member of such a certified class. It argues, however, that the contested group, those terminated between June 1, 1976 and May 11, 1980, were not in fact in the class originally certified by Judge Elfvin in 1981. The issue is thus clear cut. If the contested group was part of the class originally certified by Judge Elfvin in 1981, the judgment must be affirmed in light of Section 2(d)(3)(B). If the contested group was not part of that class, the judgment must be reversed in light of Section 405(g).

The class certified by Judge Elfvin on August 12, 1981 included

all persons who have been or will be found eligible for Title II disability insurance benefits and SSI disability benefits and with respect to whom review of continuing disability has been or will be made by ... New York State ... without substantial medical evidence to show that their medical condition has improved since their original determination of disability to the point where he or she is able to engage in substantial gainful activity.

On December 5, 1984 Judge Elfvin issued an order that "limited" the class to persons terminated on or after June 1, 1976. SSA argues that the original order was limited to claimants terminated before May 11, 1980 and that the December 5 order expanded the class in violation of the Reform Act. This argument, which is not supported by the language of the class certification, Judge Elfvin's own understanding of that order, nor the legislative history of the Reform Act, borders on the frivolous.

First, the language of the original 1981 class certification is itself virtually dispositive. It included "all persons" who had been terminated under the current disability standard, not "all persons terminated before May 11, 1980."

Second, it is clear from the record that Judge Elfvin intended to certify without regard to date of termination all those who had been terminated without evidence of medical improvement. In the original class certification he stated "this suit challenges general regulations of the Secretary and focuses on general administrative procedure," and concluded that "the present class definition is not unacceptably vague, although clarification may well be needed at the time, if any, when injunctive relief is ordered." The certification thus did not refer to date but only to legal standards for termination. When injunctive relief was granted on December 5, Judge Elfvin stated, "the class of plaintiffs certified August 12, 1981 is limited with respect to the onset date for membership therein to include persons whose Social Security disability and SSI disability benefits had been terminated ... on or after June 1, 1976 until October 8, 1984."

Judge Elfvin clearly believed he was narrowing rather than expanding the class. He defined the original class in terms of the common issue of law and waited to set the precise boundary dates until the record was developed as to when the current disability standard had been implemented. Upon the issuance of the first order that required precise definition of the boundary dates, he stated that use of the new standard had commenced on June 1, 1976, with the issuance of instructions in the Disabili-

ty Insurance State Manual ("DISM"), a primary means by which SSA informs the state agencies about disability standards. In defining the starting date, Judge Elfvin explicitly limited the class. As noted by Judge Breyer in an essentially identical case, the district court "is of course in the best position to know what the original . . . certification meant." *Avery v. Secretary of HHS*, 762 F.2d 158, 161 (1st Cir.1985).

Third, the language and legislative history of the Reform Act support inclusion of the contested group. Section 2(d)(3)(B) speaks in terms of persons who are members of certified classes, not persons who have actions pending that were brought within the sixty days mandated by Section 405(g). As explained by Senator Dole, the bill's floor manager, Section 2(d)(3)(B) meant what it said:

> The effective date provision does, however, permit all class members of certified class actions to seek review of their cases under the medical improvement standard established by this act, even where they may not have pursued their appeal rights in accordance with section [405(g)] and the Secretary's regulations.

130 Cong.Rec. S11454 (daily ed. Sept. 19, 1984). This statement cuts directly against SSA's argument that the sixty-day limit of Section 405(g) should define the boundary of the class eligible for relief. Instead, it evidences a congressional intent to extend the Reform Act to all class members of certified class actions, without regard to the usual sixty-day limit.

■ The two other decisions that have involved classes defined as all those terminated under the current disability standard have reached the same conclusion. *Avery v. Secretary of HHS*, 762 F.2d 158 (1st Cir.1985); *Kuehner v. Heckler*, 778 F.2d 152 (3d Cir.1985). In both, the original class certification set no starting date for membership. In both, after passage of the Reform Act, the starting date was defined as June 1, 1976. They add further support to the conclusion that the contested group should be considered part of the class that was certified before the September 1984 deadline. We thus affirm the inclusion of the contested group within the relief ordered by the district court.

### 2) *Application of the "Treating Physician" Rule*

Plaintiffs cross-appeal and ask that the remand to the Secretary be accompanied by an injunction that SSA apply the "treating physician" rule as established by the case-law of this circuit in adjudicating the individual claims of class members.[1]

■ The treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant ("treating physician") relative to other medical evidence before the fact-finder, including opinions of other physicians. The rule, which has been the law of this circuit for at least five years, provides that a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder. *See, e.g., Bluvband v. Heckler*, 730 F.2d 886, 892–93 (2d Cir.1984); *Aponte v. Secretary of HHS*, 728 F.2d 588, 591 (2d Cir.1984); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir.1983); *Gold v. Secretary of HEW*, 463 F.2d 38, 42 (2d Cir. 1972).[2]

---

1. We reject SSA's claim that this issue was not properly raised below. Judge Elfvin clearly regarded it as before him at least as early as 1982, when plaintiffs moved for preliminary relief, and later when he denied plaintiffs' motion to amend the judgment.

2. The court in *Bluvband*, 730 F.2d at 893, described an additional element of the treating

Plaintiffs' request for an injunction is limited, of course, to members of the class, although the relief we grant, for reasons stated *infra,* has a much broader impact.

■ SSA opposes the request on the grounds that we may not, in advance of the adjudication of claims by the SSA, impose substantive requirements on those adjudications. We disagree. We believe that in class actions governed by the Reform Act, the imposition of such requirements, if appropriate on the merits, is permissible. The Act directs that the individual cases encompassed by a class action be remanded, not dismissed. The cases to be adjudicated by SSA are thus presently within the jurisdiction of the district court, and we believe it has the equity powers that remanding courts generally have in disability cases. *See Zambrana v. Califano,* 651 F.2d 842, 844 (2d Cir.1981). "Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979). In two other medical improvement class action cases, the Supreme Court has specifically said that the lower courts are to "remand" to the Secretary, and "take other actions appropriate in light of [the Reform] Act." *Heckler v. Lopez,* —— U.S. ——, 105 S.Ct. 583, 83 L.Ed.2d 694 (1985); *Heckler v. Kuehner,* —— U.S. ——, 105 S.Ct. 376, 83 L.Ed.2d 312 (1985).[3] Moreover, a number of other courts have explicitly retained jurisdiction in remanding class actions to SSA under the Reform Act. *Avery,* 762 F.2d at 163–64 (affirming district court re-

tention of jurisdiction); *Lopez v. Heckler,* 753 F.2d 1464 (9th Cir.1985) (refusing to stay district court retention of jurisdiction); *Pickett v. Heckler,* 608 F.Supp. 841 (S.D. Fla.1985) (retaining jurisdiction); *Kuehner v. Heckler,* C.A. No. 82–1839 (E.D.Pa. Feb. 27, 1985) (same), *aff'd* 778 F.2d 152 (3d Cir.1985). We conclude, therefore, that the remand of the individual cases may be accompanied by appropriate instructions.[4]

We turn now to what instructions are appropriate on remand with regard to the "treating physician" rule. This issue involves a rather unusual set of circumstances caused by a combination of the history of the Reform Act and the respective positions taken by the parties. We therefore digress to set out the full context in which our decision must be made.

SSA has neither announced formally that it does not acquiesce in the treating physician rule nor sought review of our decisions in the Supreme Court. Plaintiffs argue that SSA has nevertheless declined in practice to apply the rule, as evidenced by *De Leon v. Heckler,* 734 F.2d 930, 937 (2d Cir.1984), where we stated that cases reversing SSA in district courts and in this court on this issue are "almost legion." Plaintiffs' position is not without support. It is established that SSA has in the past adopted a formal policy of non-acquiescence in response to legal rulings of Courts of Appeals with which it disagrees, but has declined to seek review in the Supreme Court in order to resolve the disputed point. While SSA's claim that non-acquiescence is often necessary in order to have a uniform national rule at the admin-

---

physician rule, "that there is no requirement that the physician's medical testimony be supported by objective clinical or laboratory findings." (citations omitted) SSA has claimed in *Stieberger v. Heckler,* 615 F.Supp. 1315 (S.D.N.Y. 1985), *appeal pending,* that Section 3(a)(1) of the Reform Act has changed the rules for evaluating a claimant's subjective symptoms. 42 U.S.C.A. § 423(d)(5)(A) (West 1985). In view of SSA's position, it would not be appropriate for us to order that it issue instructions to adjudicators in accord with *Bluvband.*

3. As we have previously had occasion to observe, the form of remand order adopted by the Supreme Court in *Heckler v. Kuehner, supra,* differs from the proposed form of order submitted by the Solicitor General, which would simply have directed dismissal of the complaint. *See City of New York v. Heckler,* 755 F.2d 31, 33 n. 1 (2d Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985).

4. Neither *Polaski v. Heckler,* 751 F.2d 943 (8th Cir.1985) nor *Hyatt v. Heckler,* 757 F.2d 1455 (4th Cir.1985) are inconsistent with our conclusion. *See Avery,* 762 F.2d at 163–64.

istrative level is understandable, its failure to seek a uniform national rule at the appellate level by seeking Supreme Court review is not. In considering the bill that became the Reform Act, the House and Senate conferees registered their disapproval of SSA's practices in this regard:

> By refusing to apply circuit court interpretations and by not promptly seeking review by the Supreme Court, the Secretary forces beneficiaries to re-litigate the same issue over and over again in the circuit, at substantial expense to both beneficiaries and the federal government. This is clearly an undesirable consequence.

H.Conf.Rep. No. 797, 98th Cong., 2d Sess. 38, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3038, 3080, 3096.

The conferees were at the time considering provisions in the House and Senate versions of the Reform Act that imposed certain requirements on SSA in connection with its non-acquiescence in certain decisions of various Courts of Appeals. Although they ultimately rejected these provisions, the conferees nevertheless made clear their strong disapproval of SSA's practices:

> The conference agreement deletes both the House and Senate language. The conferees do not intend that the agreement to drop both provisions be interpreted as approval of "non-acquiescence" by a federal agency to an interpretation of a U.S. Circuit Court of Appeals as a general practice. On the contrary, the conferees note that questions have been raised about the constitutional basis of non-acquiescence and many of the conferees have strong concerns about some of the ways in which this policy has been applied, even if constitutional. Thus, the conferees urge that a policy of non-acquiescence be followed *only* in situations where the Administration has initiated or has the reasonable expectation and intention of initiating the steps necessary to receive a review of the issue in the Supreme Court.

The conferees reaffirm the congressional intent that the Secretary resolve policy conflicts promptly in order to achieve consistent uniform administration of the program. This objective may be achieved in at least two ways other than non-acquiescence when the agency is faced with conflicting interpretations of the meaning and intent of the Social Security Act: either to appeal the issue to the Supreme Court, or to seek a legislative remedy from the Congress.

H.Conf.Rep. at 37, 1984 U.S.Code Cong. & Ad.News 3095 (emphasis added).

We reiterate that the "treating physician" rule as fashioned in this circuit has never been the subject of a formal statement of non-acquiescence by SSA. Nevertheless, as *De Leon* notes, reversals based on this rule by the district courts of this circuit and by this court are so numerous as to justify plaintiffs' concern that SSA does not march to that particular drummer.

This then is the overall context in which this appeal was heard. At oral argument, much time was spent on the question of what SSA's policy is with regard to the treating physician issue and what instructions SSA gives its adjudicators as to that policy. After some colloquy, counsel for SSA specifically informed the court as to "the policy position of the Secretary" and stated, "It is clear and it is clear that it is the same as the second circuit rule." He also made it clear, however, that the various statements made by SSA in its publications and instructions to adjudicators do not set out the treating physician rule.

SSA resists plaintiffs' request for relief with regard to the application of the treating physician rule to the individual cases to be remanded on the understandable grounds that the adjudications in question are too fact-specific to be the subject of an injunction-like order, and on the further grounds that such relief is superfluous in light of the Secretary's adoption of the second circuit rule as her policy. Plaintiffs attack the credibility of the claim that the Secretary has actually adopted such a policy, understandably relying on the history

of reversals by district courts of this circuit and by this court described in *De Leon* and on the SSA's failure to inform its adjudicators of the policy.

■ We take the statements made to us by counsel for SSA at face value. As an officer of the court, he was under an obligation of candor, and the preexisting controversy over the treating physician rule and the relief requested in the case surely cautioned against casual misstatements. Moreover, in *Stieberger v. Heckler*, 615 F.Supp. 1315, 1343 (S.D.N.Y.1985), entirely different SSA lawyers informed the district court that "the Secretary's standards for evaluating the opinion of a claimant's treating physician are consistent with Second Circuit opinions on this issue." Finally, we note that SSA is under a special obligation to be clear about its acquiescence or non-acquiescence in decisions of the various Courts of Appeals in light of the concerns of the Congress stated above. We therefore conclude that SSA has in fact adopted the treating physician rule and has not deliberately misstated its position to us in order "to re-litigate the same issue over and over again in the circuit, at substantial expense to both beneficiaries and the federal government." H.Conf.Rep. at 38, 1984 U.S.Code Cong. & Ad.News 3096.

Nevertheless, we are left with the historical record of district court and court of appeals reversals involving this issue and the failure of SSA to inform its adjudicators of its true policy. While we accept SSA's representations as to its policy at face value, we perceive no reason whatsoever to justify its continual failure to publish instructions as to the content of those policies in light of the enormous costs imposed on claimants and the courts by the failure of SSA adjudicators to apply the policy correctly. Indeed, SSA's argument before us that an injunction regarding the treating physician rule is inappropriate because a deliberate failure to apply the rule is not easily distinguished from an innocent misapplication fully exposes the need for it to inform its adjudicators of its policy. Absent such instructions, the danger that those adjudicators will apply the wrong legal rule to the facts will be great. Certainly the detail and complexity of SSA publications belies any claim that an issue as controversial and as litigation breeding as the treating physician rule is too trivial a matter to be included. The cost of properly instructing its adjudicators is minimal in light of the great benefits to be gained by avoiding unnecessary delay to claimants and unnecessary review by the courts. With proper instructions, moreover, the need for the more intrusive relief requested by plaintiffs disappears, unless evidence should accumulate hereafter that proper instructions are being disregarded.

We believe, therefore, that the remand of the individual cases should be followed expeditiously by an order that SSA state in relevant publications to be determined by the district court that adjudicators at all levels, state and federal, are to apply the treating physician rule of this circuit. We realize that the effect of this order will extend to all disability cases and not just to those remanded in the present litigation. However, SSA can hardly object to this result in light of its representations to us as to what its policy is and its representations here and elsewhere of the necessity for a uniform national rule. We also appreciate the need for courts to avoid unnecessary intrusion into the administrative process. *Berger v. Heckler*, 771 F.2d 1556, 1578–80 (2d Cir.1985). However, all we order here is that SSA tell its adjudicators what it has told us about the treating physician rule [5] and thus avoid the wholly unnecessary costs of litigating this issue "over and over again." H.Conf.Rep. at 38, 1984 U.S.Code Cong. & Ad.News 3096.

This marginal intrusion on SSA processes is fully justified to mitigate the effect on judicial processes in this circuit

---

**5.** *Federal Power Commission v. Idaho Power Co.,* 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15 (1952) is thus distinguishable because it involved a court of appeals ordering the modification of an FPC order even though the agency contested the modification on the merits. Our order here simply ensures that the agency's adjudicators will know what its policy is.

resulting from the apparent misperceptions of disability adjudicators with regard to the agency's position on the treating physician rule. The issuance of appropriate instructions will reduce the need for judicial review in many cases by avoiding application of the wrong legal rule and will facilitate that review when it occurs by encouraging disability adjudicators to make findings that deal with the relevant evidence. Needless litigation, including remands to SSA, will be avoided, and review by district courts and this court will be more focused.

We leave to the district court the task of fashioning the precise order to accompany the remand. It should, however, specify the actions to be taken by SSA to instruct all relevant adjudicators, state and federal, that they are to apply the treating physician rule as fashioned by this court. That rule provides that a treating physician's opinion on the subject of medical disability is binding on the factfinder unless contradicted by substantial evidence. "Medical disability" refers to medical questions of diagnosis and nature and degree of impairment. In addition, the treating physician's opinion on the subject of medical disability is entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

### 3) *The Notice to Class Members*

Plaintiffs also cross-appeal from the district court's order concerning notice to members of the class. They request a variety of measures calculated to assure that the class members receive timely and comprehensible notice of their right to re-adjudication.

Congress intended in the Reform Act that members of medical improvement class actions be able to readjudicate their claims. The Reform Act thus provides that the Secretary shall mail individual notices to members of such class actions and that "the individual must request ... review within 120 days after the date on which such notification is received." Reform Act § (2)(d)(3).

The effectiveness of this notice depends heavily on the accuracy of the address lists from which the mailings are made. Plaintiffs argue on the cross-appeal that SSA's address lists are faulty, that reasonable steps are possible to improve notice to class members, and that these steps should be taken. Plaintiffs have thus requested that SSA match its outdated list of class members' addresses with the more up-to-date list in the possession of the New York State Department of Social Services ("NYSDSS"). On May 21, 1985, we granted a partial stay on the condition "That the Secretary shall transfer the relevant computer tapes to the proper authorities of the State of New York within fourteen days of the date of this order." The State was then to process the tapes, and produce an updated list for use by SSA. Plaintiffs now claim that our stay is being interpreted by SSA to require the computer match only for the contested members of the class, and that SSA refuses to match with the NYSDSS records for the post-May 1980 class members whose notices were returned as undeliverable. If so, we disagree with SSA's view. The stay was conditioned in the way described *supra* on the belief that an updated address list was necessary to assist in the notice to all class members who are eligible for readjudication. SSA should promptly take appropriate steps to broaden the computer match.

Plaintiffs also argue that SSA furnish plaintiffs' lawyers with up-to-date lists of class members whose notices are returned as undeliverable. We agree. Such information is said to be the subject of an SSA weekly report. Such a list would be an effective way for plaintiffs' lawyers to attempt to locate and notify those members of the uncontested class whose letters were returned as undeliverable. For contested members of the class, lists of undeliverable letters will serve the same purpose. In

addition, if the district judge finds that the notice sent to members of the uncontested class was not adequate, *see infra,* he shall direct that new notice be sent to those class members who received the earlier notice but did not respond. If the prior notice was adequate, we believe the cases of non-respondents are now closed.

■ Finally, the notice to class members was sent out after the district court's decision and has not been examined for adequacy by it. We agree with plaintiffs that the district court should examine that notice, and fashion its own more effective notice, if necessary. Both the intent of the Reform Act and common sense favor clear notice to the class. *See Avery v. Heckler,* 762 F.2d at 164–65 (affirming district court revision of notice to medical improvement class members). All members of the class have at least once been found to be disabled under the Act. Some members also belong to the subclass of mentally disabled claimants. Special consideration thus may be called for in order to afford notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *See Fabula v. Buck,* 598 F.2d 869, 874 (4th Cir.1979) (ordering notice "best calculated to reach the aged, blind and disabled class members"). We express no opinion on the adequacy of the letter sent out by SSA, but remand the issue to be resolved according to the district court's sound discretion. If a new notice is necessary, it should be sent to all members of the class except those who timely responded to the prior notice.

We also modify the partial stay pending appeal. The protective notice of election remains in effect. The Secretary shall transfer the relevant computer tapes to the proper authorities of the State of New York within fourteen days of the date of our mandate for any class members who were not included in the earlier transfer. Finally, initial notice should not be sent to any further class members until the district court has approved the form letter that informs members of their right to readjudication. This stay of the mailing of initial notice shall not be construed to prevent any action to contact class members whose 120-day period has already begun.

### 4) *Conclusion*

The decision of the district court is affirmed as to membership of the contested group in the class. The decision is reversed as to the cross-appeal. We remand to the district court for further proceedings consistent with this opinion. In order to ensure prompt reconsideration of the claims for benefits, those claims should be remanded forthwith to the Secretary after disposition of the issues relating to notice to class members. The district court shall retain jurisdiction over the claims for ancillary relief concerning the formulation of instructions to disability adjudicators.

Costs to appellees-cross-appellants.