Annie GEORGE, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 87 Civ. 6305(CES).

United States District Court, S.D. New York.

July 25, 1988.

Annie George, New York City, pro se.

Rudolph W. Giuliani, U.S. Atty., New York City by Diogenes P. Kekatos, Asst. U.S. Atty., for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Annie George brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She seeks reversal or remand of the Secretary's decision on the ground that the decision was not supported by substantial evidence. Pursuant to Fed.R.Civ.P. 12(c), plaintiff moves, and the Secretary cross-moves, for judgment on the pleadings. For the reasons that follow, plaintiff's motion for a remand of the Secretary's decision is granted.

### Background

Plaintiff is a fifty-five year old woman with a high school education, who for twenty-five years worked as a chambermaid. In October 1985, she had to leave her job as a result of a back injury. In January 1986 she applied for DIB and SSI. In March 1986 her application was denied, and the denial was affirmed on August 4, 1986. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). The requested hearing was held on February 26, 1987, with plaintiff appearing *pro se*. On June 13, 1987, the ALJ denied plaintiff's claim. Plaintiff sought review of the ALJ's decision by the Secretary's Appeals Council, which on August 6, 1987, affirmed the denial of benefits. This action followed.

### The Record Below

The ALJ in this case determined that plaintiff was not suffering from a "listed" impairment that would result in an automatic finding of disability, *see* 20 C.F.R. § 404.1520(a) and 20 C.F.R. Part 404 Subpt. P, App. 1, but was unable to perform her past relevant work as a chambermaid. R 11–12.[1] The Secretary thus had the burden of proving that plaintiff had the "residual functional capacity," as well as transferable skills derived from her education, experience, and training, to perform other gainful work which exists in the national economy. 20 C.F.R. § 404.1520(f); *see Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir.1983); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). The ALJ found that while plaintiff's impairment precluded her from returning to her prior work, plaintiff had the functional capacity, as well as the

---

1. "R" refers to the Administrative Record filed by the Secretary with her answer.

transferable skills, to perform "light work." R 12-13. *See* 20 C.F.R. § 1567(b). "Light work" is defined in 20 C.F.R. § 1567(b) as work which requires "lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." [2]

Plaintiff testified at the hearing that she suffers persistent back and leg pain, left-side numbness, and throbbing headaches, that she was unable to bend or kneel without pain, and that she could not lift more than five pounds. R 32-36. The Administrative Record also includes a number of medical reports from a variety of doctors. Collectively, these paint a decidedly unclear picture as to plaintiff's ability to pick up and carry objects of varying weight.

For example, a report from Dr. Jeff Bueno, whom the ALJ described as a "treating chiropractor" (R 11), diagnosed "disc displacement, vertebral malposition, sciatic nerve root compression," and observed continuous "mild to severe" lower back pain. R 141-43. Dr. Bueno noted that plaintiff could only lift and carry up to ten pounds, and could not push or pull objects over fifty pounds. R 142-43. The telephonic report of Dr. John Pease, who had seen plaintiff on two occasions, noted "mechanical back pain with some symptoms of radiculopathy [3]," but stated that there had been "no evidence of any observations regarding limitation of motion." R 83. A report from Dr. N. Rainford, who conducted a consultative examination of plaintiff on November 26, 1986, revealed that plaintiff suffered from chronic lower back syndrome with probable arthritis, that she was severely limited in her ability to climb, balance, stoop, crouch, kneel, crawl, reach, or push and pull, and that her lifting and carrying capacity was limited to five to ten pounds. R 97-101.

The report of Dr. S.A. Malek, who had treated plaintiff on a biweekly basis from October 1985 through May 1986, indicated that plaintiff suffered from a muscle spasm causing a limitation of flexion of the lower back, but contained no information as to the amount of weight plaintiff could lift or carry. R 87-90. The report of Dr. Ashak [4], who had treated plaintiff on a monthly basis since May 20, 1986 (R 144) but of whom only perfunctory mention is made in the ALJ's decision, described plaintiff's "low back pain syndrome" which remained unrelieved, and which inhibited plaintiff's ability to bend, squat, kneel, grasp, push and pull. R 144-45. However, that portion of the report which requests the Dr. Ashak's assessment of plaintiff's functional abilities, including her capacity to lift and carry weight, was left blank.

Based on all of the above, the ALJ found that "the record as a whole does not preclude [plaintiff's] capacity to lift 10 pounds on a frequent basis." R 12. Having thus been found capable of performing "light work," plaintiff was denied benefits.

### Discussion

■ We find that the ALJ's decision must be reversed and remanded because the ALJ did not apply the treating physician rule. Under Second Circuit law, a "treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a

---

**2.** 20 C.F.R. § 1567(b) also provides that, absent additional limiting factors, a person having the ability to do "light work" can also do "sedentary work." Because of his determination that plaintiff could perform "light work," the ALJ did not expressly address the question of plaintiff's ability to do "sedentary work." Plaintiff contends that whether or not she is capable of performing "light work," her age and lack of transferable skills would make it impossible for her to find jobs entailing "sedentary work" in the national economy. Accordingly, plaintiff argues that a finding that she was unable to perform

"light work" would inevitably result in a finding of disability. This is an issue to be decided, if necessary, by the ALJ on remand.

**3.** Radiculopathy is a degenerative disease of the nerve roots. Dorland, *Illustrated Medical Dictionary* 1264 (W. Saunders 24th ed. 1965).

**4.** This report, entitled "Questionnaire as to Residual Functional Capacity," is in the form of a standardized medical questionnaire furnished to treating doctors by the Secretary.

claimant's medical condition than are other physicians...." *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986) (*"Schisler I"*).

A recent Social Security Ruling, which emanated from the Court of Appeals' decision in *Schisler I*, and which was recently approved by that court in *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988) (*"Schisler II"*), sets forth the current state of Second Circuit law regarding application of the treating physician rule. This Ruling contains the following description of the treating physician:

> A claimant's treating source is his or her own physician, osteopath or psychologist ... who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual. The nature of the physician's relationship with the patient, rather than its duration or its coincidence with a claim for benefits, is determinative.

*Schisler II*, at 46.

■ A number of the medical reports upon which the ALJ purportedly based his finding that plaintiff could perform "light work" were identified by the ALJ as being from "treating physicians." R 11–12. It is apparent, however, that the only doctors who clearly fit this description are Dr. Ashak and Dr. Malek. As the Secretary points out, Dr. Bueno, the "treating chiropractor," is not an acceptable medical source, and his findings are not given the extra weight accorded a treating physician. 20 C.F.R. § 404.1513(a); *Vasquez v. Secretary of Health & Human Services*, 632 F.Supp. 1560, 1565 (S.D.N.Y.1986). Dr. Pease had only seen plaintiff on two occasions, and the nature of his relationship with plaintiff does not rise to the level of a treating physician. *See Schisler II*, 851 F.2d at 45. Dr. Rainford, who conducted only a single consultative examination of plaintiff at the Secretary's behest, is plainly not a treating physician. *See id.* at 46. And while Dr. Malek was a treating physician, his treatment of plaintiff terminated in May 1986, ten months before plaintiff's February 1987 hearing, and his report contained no assessment of plaintiff's ability to lift and carry weight, the crucial factor in determining plaintiff's residual functional capacity.

■ Dr. Ashak, on the other hand, treated plaintiff on a monthly basis since May of 1986. The nature and duration of their ongoing physician-patient relationship indicate that Dr. Ashak is in a superior position to give a reliable assessment of the medical factors underlying the determination of plaintiff's residual functional capacity. In view of the vague and contradictory assessments provided by the various other medical sources, obtaining Dr. Ashak's responses to such questions as plaintiff's ability to lift and carry weight is absolutely essential to an informed determination of plaintiff's residual ability to perform "light work."

The aforementioned Social Security Ruling approved in *Schisler II* states as follows:

> Medical evidence and opinion from claimant's treating source is important because the treating source, on the basis of the ongoing physician-patient relationship, is most able to give a detailed history and a reliable prognosis. *Therefore, treating source evidence should always be requested and every reasonable effort should be made to obtain it.* Treating sources should be requested to provide complete medical reports consisting of a medical history, clinical findings, laboratory findings, diagnosis, treatment prescribed and response to any treatment, prognosis, and a medical assessment; i.e., a statement of the individual's ability to do work-related activities. *If the treating source provides an incomplete medical report, the adjudicator will request the necessary additional information from the treating source.*

*Schisler II*, 851 F.2d at 47 (emphasis added).

Dr. Ashak's undated, unsigned and incomplete report is devoid of anything that might be characterized as a medical assessment of plaintiff's ability to do work-related activities. Indeed, the critical portion of the questionnaire that called for such an

assessment was circled and left blank, with a handwritten note in the margin reading, "To Dr. Ashak." This strongly suggests, as plaintiff argues in her brief, that the completed portion of the report was filled out by someone other than Dr. Ashak, and that the key section was routed to Dr. Ashak but never completed. Yet there is nothing in the Record indicating that the ALJ ever followed up on the questionnaire, or in any way sought to contact Dr. Ashak to obtain the omitted information. Plainly, the ALJ did not make "every reasonable effort" to obtain this critical treating source evidence. *Id.*

It is thus abundantly clear that the treating physician rule could not have been applied because the relevant treating physician evidence was never considered by the ALJ. Although the ALJ's decision explicitly refers to the treating physician rule as enunciated in *Schisler I* (R 8), mere citation to the rule cannot substitute for compliance.

This is far from the first time an ALJ has failed to correctly apply the treating physician rule. In fact, the frequency of such failures has long been a matter of judicial concern. *See De Leon v. Secretary of Health & Human Services,* 734 F.2d 930, 937 (2d Cir.1984) (noting that reversals due to ALJs' failure to apply treating physician rule "are almost legion"); *see also Arzuaga v. Bowen,* 833 F.2d 424, 425 (2d Cir.1987). Although the Secretary has assured the Court of Appeals that ALJs' persistent failure to apply the rule has been remedied, *see Schisler I,* 787 F.2d at 83, there is apparently work yet to be done.

In the instant case, the ALJ failed to make "every reasonable effort" to acquire from the treating physician, Dr. Ashak, the information necessary to evaluate plaintiff's residual functional capacity. Thus, the ALJ could not possibly have applied the treating physician rule in determining that plaintiff was capable of performing "light work" and hence not disabled. This case is therefore remanded in order for the ALJ to obtain the necessary treating source evidence and apply the treating physician rule.[5]

Plaintiff's motion to remand is granted.

SO ORDERED.

---

5. The ALJ's determination that plaintiff's psychiatric impairment, namely adjustment disorder with severe depression (R 40, 107–12, 156–61), did not cause significant restrictions in plaintiff's functional capacity is supported by substantial evidence, and need not be reconsidered on remand. Plaintiff's argument that the ALJ erred in not considering a "closed period of disability" based upon her mental disorder is without merit. *See* Plaintiff's Memorandum of Law at 23–24. The seven-month period between plaintiff's initial treatment for such disorder and her treating physician's subsequent finding of normal mental functional abilities does not meet the twelve-month durational requirement under the Social Security Regulations for a finding of disability. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a), 404.1509.