Luis PANTOJAS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98 Civ. 3391 (LAK).

United States District Court, S.D. New York.

March 16, 2000.

Luis Pantojas, pro se plaintiff.

Lorraine S. Novinski, Assistant United States Attorney, Mary Jo White, United States Attorney, New York City, for defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Luis Pantojas brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security

Income ("SSI") disability benefits. Pending before the Court is the Commissioner's motion for judgment on the pleadings. For the reasons set forth below, the Court grants the Commissioner's motion and dismisses the complaint.

## Background
### Prior Proceedings

Plaintiff applied for SSI disability benefits on January 17, 1996, apparently on the grounds that he suffered from high blood pressure, a heart problem, and diabetes.[1] Plaintiff's application was denied on March 11, 1996.[2] Plaintiff requested a reconsideration of his application on March 18, 1996.[3] After reconsidering plaintiff's claim, in light of new medical evidence and information received subsequent to the original decision as well as the original record, plaintiff's claim once again was denied on June 28, 1996.[4] Plaintiff requested a hearing before an administrative law judge ("ALJ") on September 11, 1996[5] which was held on June 24, 1997.[6] Plaintiff appeared without representation and testified through the use of a Spanish interpreter.[7] On July 2, 1997 the ALJ issued a decision denying plaintiff's claim for SSI.[8] This determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for a review[9] on January 27, 1998.[10]

### Facts of Record

At the time he filed his application in 1996, plaintiff was 39 years old.[11] He is a U.S. citizen, has an eighth grade education, and does not speak English.[12] He spent 1989 to 1995 in prison and has no work history.[13] When he originally filed for disability, plaintiff claimed that he was disabled as a result of diabetes, a heart condition, and high blood pressure.[14] Evidence in the administrative record demonstrates that he was admitted to St. Agnes Hospital on January 24, 1994 for a cerebrovascular accident in the left thalmus area (a stroke)[15] and that he has been treated at North General Hospital since October 1995 for alcoholism and cocaine use.[16] Additionally, he claims that he is bothered by asthma which he has had since birth.[17] In his complaint, plaintiff includes his asthma and the effects of his stroke as disabilities that prevent him from working.[18]

The record contains medical reports from several physicians who have examined Mr. Pantojas. On February 26, 1996 he underwent a physical examination conducted by Dr. Peter Graham.[19] Dr. Gra-

---

1. Tr. 38–41, 64, 79–86 (Tr. refers to the administrative record filed by the Commissioner as part of his answer pursuant to 42 U.S.C. § 405(g)).

2. *Id.* at 64, 111–18.

3. *Id.* at 65; *see also id.* at 87–92.

4. *Id.* at 74–76.

5. *Id.* at 77–78; *see also id.* at 93–94.

6. *Id.* at 31–37.

7. *Id.* at 31; *see also id.* at 12.

8. *Id.* at 9–22.

9. *Id.* at 7–8 (filed July 31, 1997).

10. *Id.* at 4–6.

11. *Id.* at 38.

12. *Id.* at 33, 79–86.

13. *Id.*

14. *Id.* at 79.

15. *Id.* at 98.

16. *Id.* at 167–82.

17. *Id.* at 95–97.

18. Cpt. ¶¶ 4, 8.

19. On April 2, 1996 the State of New York Department of Health suspended Dr. Graham's medical license for two years, stayed the suspension, and imposed a two-year period of probation. *See* Def.Mem. in Support of Judgment on the Pleadings, Ex. B. Because his license was not suspended when he examined the plaintiff, it was not inappropriate for

ham found that plaintiff's breath sounds were clear with no rales, rhonchi, or wheezing, he had a full range of motion of all joints without pain, and his muscle strength was adequate.[20] An EKG showed regular sinus rhythm, his cardiogram was normal, and the doctor found that his hypertension was controlled by medication. The doctor concluded that plaintiff was able to "sit, stand, walk, lift, carry, handle objects, hear, speak and travel" and that his prognosis was stable.[21]

Dr. Graham referred the plaintiff for a psychiatric evaluation due to a previous history of psychiatric disorder. The doctor who performed this evaluation, Dr. Luigi Marcuzzo, found that plaintiff was pleasant and cooperative, appropriately dressed with good personal hygiene, and related appropriately to the interviewers. He concluded that plaintiff would benefit from psychiatric treatment and alcohol and drug rehabilitation treatment, but that he had no significant psychiatric limitation with respect to sustained concentration, persistence, social interaction, and adaption, and no limitations at all with respect to memory and understanding.[22]

On May 22, 1996, after the first denial of plaintiff's claim but before reconsideration, plaintiff underwent another physical examination at New York Diagnostic Centers, Inc.[23] The examining physician, Dr. Howard Finger, found that plaintiff had hypertension and that his blood pressure was poorly controlled, had some weakness and loss of dexterity in his right hand as a result of the stroke, chest pain, chronic asthma with mild symptoms, non-insulin dependent diabetes mellitus, hypercholesterolemia, and chronic recurrent headaches.

Plaintiff's pulmonary function tests were essentially normal. His overall prognosis was guarded, but Dr. Finger concluded with regard to work-related activities that plaintiff had no gross difficulty in terms of sitting, was mildly limited in the duration of time he could stand, and was mildly to moderately limited in the distance he could walk and in his ability to lift and carry.[24]

On June 24, 1996 plaintiff underwent a treadmill examination with Dr. Graham. The examination was curtailed because of fatigue, but plaintiff experienced no chest pain and the doctor noted that "no significant arrythmia [sic]" was present.[25]

Finally, on May 22, 1997, after plaintiff's claim was denied on reconsideration but prior to his hearing before the Administrative Law Judge, Mr. Pantojas' treating physician, Dr. Adrian Gherman, completed and submitted a medical report.[26] Dr. Gherman stated that he first examined the plaintiff on October 5, 1995, and had seen him every one to five months since, most recently on May 16, 1997.[27] Plaintiff's initial and current complaints were of headaches, poor vision in his right eye, and pain in his right thigh when walking. Dr. Gherman stated that the plaintiff "is able to walk, but no[t] fast," and that he was responding satisfactorily to treatment for the stroke, non-insulin dependent diabetes mellitus, transient hypertension, hypercholesterolemia, and bronchial asthma.[28]

At his hearing on June 24, 1997, Mr. Pantojas testified that he is always in pain, can walk two to two and one half blocks, cannot stand for very long, can sit restless-

the ALJ to rely on the results of his examination. *See Davis v. Callahan,* No. 96 Civ. 9367(SAS), 1997 WL 438772, at *9 (S.D.N.Y. Aug.4, 1997), *aff'd,* 145 F.3d 572 (2d Cir. 1998).

20. Tr. 111–16.

21. *Id.*

22. *Id.* at 117–18.

23. *Id.* at 119–37.

24. *Id.*

25. *Id.* at 138–51.

26. *Id.* at 159–66.

27. *Id.*

28. *Id.*

ly, and can lift no more than 10 pounds.[29] He testified also that he sometimes cooks for himself, washes his own dishes, and goes shopping. He attends religious services and writes poetry and songs. Plaintiff stated also that he suffers from "terrible headaches" and that the last time he worked outside of prison was in 1987 when he sorted papers and put them in boxes.[30]

### Discussion

In assessing a claim for disability benefits, the Commissioner engages in a five-step process designed to determine whether a person has a "disability" within the meaning of the statute.[31] The first step considers whether the claimant is engaged in "substantial gainful activity." If so, then benefits are denied.[32] If not, the second step considers whether the claimant's impairment is "severe." If not, benefits are denied.[33] If so, the third step considers whether the impairment meets or equals a condition set forth in the "Listing of Impairments" contained in the regulations.[34] "These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment."[35] If the impairment meets or equals a listed impairment, the claimant is "disabled" and is entitled to benefits, and the inquiry ends. If not, the fourth step examines the claimant's "residual functional capacity," which involves an analysis of the claimant's capacity to engage in basic work activities and a decision as to whether the claimant has the capacity to engage in his or her prior work. Benefits are denied if the claimant's residual functional capacity allows the claimant to perform his or her prior work.[36] If the claimant's residual functional capacity does not rise to the level required by his or her prior work, however, the claimant is entitled to benefits unless the Commissioner can demonstrate that the claimant, in light of his or her residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy."[37]

Applying the sequential evaluation process to plaintiff's claim, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since January 3, 1996, when the claim was filed.[38] Proceeding to the next step, the ALJ weighed the significance of plaintiff's non-insulin dependent diabetes mellitus, hypertension, bronchial asthma, a history of drug and alcohol abuse (in remission) and status-post left cerebrovascular accident with mild residuals and found that they resulted in a "severe impairment."[39] At the third step, the ALJ found that plaintiff's impairments are not listed in or medically equivalent to any listed in the relevant regulations.[40] Because plaintiff has no past relevant work experience that his "residual functional capacity" would allow him to perform, the ALJ skipped the fourth step and proceeded to the fifth step. The ALJ observed that the evidence shows plaintiff's impairments limit him to work at the sedentary exertional level and that he has no addi-

---

29. *Id.* at 31–37.

30. *Id.*

31. 20 C.F.R. §§ 404.1520, 416.920.

32. *Id.* §§ 404.1520(a), (b), 416.920(a), (b).

33. *Id.* §§ 404.1520(c), 416.920(c).

34. *Id.* §§ 404.1520(d), 416.920(d), Pt. 404, Subpt. P, App. 1.

35. *Dixon v. Shalala,* 54 F.3d 1019, 1022 (2d Cir.1995).

36. 20 C.F.R. §§ 404.1520(e), 416.920(e).

37. *Decker v. Harris,* 647 F.2d 291, 298 (2d Cir.1981); *see also* 20 C.F.R. §§ 404.1520(f), 416.920(f).

38. Tr. 14.

39. *Id.* at 14–15.

40. *Id.* at 15.

tional non-exertional limitations.[41]

Considering all of the medical evidence as well as plaintiff's testimony at the hearing and the various statements made in his applications, the ALJ found that plaintiff is capable of sitting for at least six hours, standing or walking for two hours, and carrying objects weighing up to ten pounds during the course of an eight-hour workday. Noting that this is compatible with the ability to perform sedentary work and taking into consideration plaintiff's vocational profile (age, education, and work experience), the ALJ concluded that "jobs exist in significant numbers in the national economy which he can perform and that he is, therefore, not 'disabled' within the meaning of the Social Security Act." [42]

*Judicial Review*

■ Judicial review of the Commissioner's final determination is strictly limited. The court may set aside the Commissioner's determination solely when it is based upon legal error or is not supported by substantial evidence.[43]

In his complaint, plaintiff asserts that he presented sufficient medical evidence to support a finding that he is disabled.[44] The Commissioner found that plaintiff's statements regarding his inability to work due to medical impairments are *not* supported by medical evidence or plaintiff's statements regarding his physical and mental abilities.[45]

■ After a thorough review of the administrative record the Court concludes that the Commissioner's findings in this case are supported by substantial evidence. As the ALJ set forth in his hearing decision, sedentary work is defined in the applicable regulations as work performed mostly in a seated position, requiring only occasional standing or walking, and does not require carrying objects weighing more than ten pounds. There is ample evidence in the record indicating that plaintiff is capable of this level of exertion. Each of the four doctors that examined plaintiff submitted medical reports that support the Commissioner's finding. Indeed, plaintiff himself describes his abilities as precisely within these parameters.

As the ALJ correctly wrote in his hearing opinion, plaintiff's vocational profile and capacity for sedentary work place him within the framework of Rule 201.23,[46] which directs a finding that a younger individual, 18 to 44 years of age, who is illiterate or unable to communicate in English and has no previous work experience but is able to perform a full range of sedentary work is not disabled. Although the directed result would be different if plaintiff had applied when he was 45 years of age or older, the ALJ's finding was correct in light of plaintiff's age at the time of his application.[47] In consequence, the Court concludes that the Commissioner's finding that plaintiff is not eligible for supplemental security income was supported by substantial evidence and not based upon legal error.

*New Evidence*

Plaintiff attached several pieces of evidence to his complaint that were not presented to the Commissioner for consideration in determining plaintiff's claim. This new evidence cannot, therefore, be considered by the Court in its review of the

41. *Id.*

42. *Id.* at 15–17.

43. *See, e.g., Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Quinones v. Chater,* 117 F.3d 29, 33–35 (2d Cir.1997); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

44. Cpt. ¶ 8.

45. Tr. 16.

46. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1.

47. *See id.* § 201(h) and Rule 201.17.

Commissioner's decision.[48] The Court may remand the case to the Commissioner for consideration of new evidence upon a showing that the evidence is material and that there was good cause for the failure to incorporate such evidence into the record in a prior proceeding.[49]

■ The Second Circuit has set forth a three-pronged test which plaintiff must satisfy in order for a court to remand a case to the Commissioner to consider additional evidence. A plaintiff must show that the proffered evidence is:

"(1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the [plaintiff's] condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide [plaintiff's] application differently. Finally, [plaintiff] must show (3) good cause for [his] failure to present the evidence earlier." [50]

Upon remand by the Second Circuit, the district court in *Tirado v. Bowen*[51] found that plaintiff satisfied the standard set forth by the Circuit and remanded the case to the Secretary for consideration of the new evidence. The court found that records documenting in- and out-patient treatment that occurred subsequent to the Secretary's final determination of plaintiff's application satisfied the materiality requirement because (1) there was a reasonable possibility that they would have influenced the Secretary's decision, and (2) the evidence was relevant to the claimant's condition during the period for which benefits were denied. The court held that to be relevant, evidence of a recent diagnosis "must tend to prove that the claimant was disabled during the period covered by the claim." [52]

■ In this case, plaintiff has submitted discharge papers from North General Hospital indicating that he was hospitalized and released on January 23, 1998. The evidence does not indicate how long plaintiff was hospitalized. The plaintiff included also slips indicating that follow-up appointments took place in February and March, and a note from his attending physician, Dr. Gherman, dated February 2, 1998, stating that, "[t]his Pt is under care for Hypertension, . . . strock [sic], being discharged from North Gen. Hospital. In addition the Pt. has Diabetes and Bronchial Asthma. The Pt. is unable to work."

Although courts have been inconsistent in holding that subsequent medical developments are relevant to a claimant's condition during the period covered by the claim,[53] it is this Court's belief that the subsequent treatment of plaintiff's previously non-disabling condition or conditions in this case is not relevant to his condition during the time period for which benefits were denied.[54] In other words, the evidence submitted is not probative of plaintiff's condition during the period covered by the claim.

Additionally, the Court does not find that there is a reasonable possibility that the new evidence would have influenced the Commissioner to decide the plaintiff's application differently. Dr. Gherman's note does not indicate the presence of conditions or symptoms that were not known to the Commissioner when he made his

48. *See* 42 U.S.C. § 405(g).

49. *Id.*

50. *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988) (internal quotations and citations omitted); *see also Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991).

51. 705 F.Supp. 179, 181 (S.D.N.Y.1989).

52. *Id.* at 181–82.

53. *Id.* at 182.

54. *See Szubak v. Secretary of Health & Human Services,* 745 F.2d 831, 833 (3d Cir.1984) (per curiam) ("An implicit materiality requirement is that the new evidence . . . not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").

final decision regarding plaintiff's disabled status. Those conditions do not meet or equal a listed impairment as set forth in the applicable regulations, nor do they, in the opinions of three doctors other than Dr. Gherman, prevent the plaintiff from engaging in sedentary work.[55] Thus, evidence of continued treatment for the conditions would not have influenced the Commissioner to decide plaintiff's application differently. In consequence, the new evidence offered by plaintiff does not satisfy the materiality requirement and there is no need to remand to the Commissioner for consideration of that evidence.

The Court notes that this decision does not prevent plaintiff from filing a new application for benefits based upon any alleged deterioration of his condition and including as evidence the medical reports corresponding to his hospitalization and treatment in January and February of 1998.

### Conclusion

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted. Plaintiff's complaint is dismissed, and the decision of the Commissioner is affirmed.

SO ORDERED.

---

**55.** The Court recognizes that Dr. Gherman is plaintiff's treating physician and that opinions of treating physicians long received added weight. *See Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986). In 1991 the Social Security regulations were revised, however, to limit the weight accorded such opinions. *See Sharieff v. Shalala,* 877 F.Supp. 104, 107 (E.D.N.Y.1995). Treating physicians' opinions currently are entitled to controlling weight only if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. § 404.1527(d)(2) (1991). In this case, Dr. Gherman's opinion that plaintiff is unable to work is contradicted by medical evidence contained in the record as well as the testimony of plaintiff himself. In addition, a statement by a medical source that a claimant is "unable to work" does not mean that he is disabled—determination of whether a claimant meets the statutory definition of disabled is reserved to the Commissioner. *Id.* § 404.1527(e)(1).