**Wilhemenia SMITH, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 86 CIV. 2856 (SWK).**

United States District Court, S.D. New York.

June 17, 1988.

28. *Id.* at 727.

Harlem Legal Services, New York City by Fernando A. Candia, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City by Mark S. Sochaczewsky, Annette H. Blum, Peter O'Malley, Asst. U.S. Attys., for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging a final determination by the Secretary of Health and Human Services (the "Secretary") which denied plaintiff's application for Supplemental Security Income ("SSI") benefits based upon disability. On November 5, 1986, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule"), defendant moved for judgment on the pleadings. The action was referred to Magistrate Nina Gershon who issued a Report and Recommendation ("Report") on July 13, 1987 recommending that the Secretary's decision be reversed and that the case be remanded to the Secretary for further administrative proceedings. Presently before this Court are the Magistrate's recommendation and the Secretary's timely, Rule 72(b) objections.

## BACKGROUND

Plaintiff filed an application for SSI benefits on July 30, 1984, claiming disability due to sarcoidosis [1], asthma, high blood pressure and arthritis. Both initially and upon reconsideration, plaintiff's application was denied. At plaintiff's request, a hearing was held on September 3, 1985 before Administrative Law Judge ("ALJ") Newton Greenberg who considered the case *de novo*. The ALJ's decision to deny plaintiff's SSI claim became the final determination of the Secretary when it was approved by the Appeals Council on December 23, 1985.

Plaintiff testified before the ALJ that her symptoms first appeared "around" 1975, and that she is unable to work because she is unable to sit, stand, bend or lift for long periods of time. From September 3 to September 10, 1983 plaintiff was a patient at Harlem Hospital, where Dr. J. Comer issued a report listing plaintiff's principal diagnosis as aseptic meningitis [2] and secondary diagnoses of sarcoidosis, asthma and hypertension. Dr. D.L. Washington, a Harlem Hospital physician who examined plaintiff, issued a letter on April 11, 1984 stating that plaintiff was being treated for sarcoidosis and that "she should not return to work at this time."

Dr. John Cohn, from a consultative examination performed on May 17, 1984, issued a diagnosis of pulmonary sarcoidosis,

---

**1.** Sarcoidosis is defined as a "systemic granulomatous disease of unknown cause, especially involving the lungs with resulting fibrosis, but also involving lymph nodes, skin, liver, spleen, eyes, phalangeal bones, and parotid glands." *Stedman's Medical Dictionary,* Fifth Lawyers Edition, 1982.

**2.** Meningitis is defined as an "inflammation of the membranes of the brain or spinal cord." *Id.*

bronchial asthma, pulmonary insufficiency, arthralgia [3] and morbid obesity. Dr. Cohn noted that "the stress test could not be performed since the patient could not tolerate the exercise," and stated additionally that plaintiff was "being followed at the Harlem Hospital Chest Clinic every four to six weeks."

Also in the record are three residual functional capacity assessments ("RFCA's") issued between July 11, 1984 and January 24, 1985 by state reviewing physicians and based exclusively on reviews of plaintiff's medical records. These RFCA's, with minor limitations, found plaintiff to be capable of a range of activity —standing, walking, sitting, pushing, pulling and occasional lifting—which would enable her to perform some kind of substantial, gainful work. The third RFCA stated that, because of plaintiff's obesity, she would be capable of performing only "medium work."

Plaintiff was represented before the ALJ by a paralegal. The ALJ determined that plaintiff presented medical evidence of morbid obesity, controlled hypertension, controlled bronchial asthma, arthralgia and a history of sarcoidosis, without clinical findings. The ALJ concluded that plaintiff did not suffer "an impairment or combination of impairments listed in, or medically equal to one listed in" Part A of Appendix 1, 20 C.F.R. Part 404, Subpart P; that plaintiff's impairments "do not prevent [her] from performing her past relevant work"; and that Dr. Washington's opinion that plaintiff "should not return to work" was entitled to little weight because the doctor "did not offer any clinical findings in support of [that] opinion but merely restated what he was told."

The Magistrate decided that the ALJ did not properly substantiate his failure to accord any weight to the opinion of Dr. Washington, as a treating physician, that plaintiff "should not return to work." The Magistrate cites *Schisler v. Heckler*, 787 F.2d 76 (2d Cir.1986), for the proposition

that "there is no requirement that the physician's medical testimony be supported by objective clinical or laboratory findings." *Id.*, at 81–82 n. 2. The Magistrate maintains, additionally, that the ALJ failed to assist the plaintiff affirmatively in developing the record and that the ALJ ignored, without explanation, other evidence consistent with plaintiff's claim.

Defendant objects to the Magistrate's recommendation on two grounds. First, the Secretary argues that the language quoted by the Magistrate from *Schisler* was specifically rejected in that case as a part of the Second Circuit's "treating physician rule" and that the ALJ, therefore, was justified in according little weight to "Dr. Washington's unsubstantiated conclusory opinion." Secondly, the Secretary claims that plaintiff was represented by counsel at the administrative hearing and that the ALJ therefore had no such responsibility to assist plaintiff as the Magistrate asserts.

## DISCUSSION

Plaintiff bears the burden of proving her own disability. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984). In the absence of legal error, the Secretary's finding that plaintiff is not disabled is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Bluvband, supra*, 730 F.2d at 891. The Secretary, however, must render a decision on the basis "of *all* the relevant evidence." *Ceballos v. Bowen*, 649 F.Supp. 693, 700 (S.D. N.Y.1986) (emphasis in original); *see also* 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(5). Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984), he cannot pick and choose evidence that supports a particular conclusion. *Fiorello v. Heckler*, 725 F.2d 174, 175–76 (2d Cir.1983); *Ceballos, supra*, 649 F. Supp at 700. His "failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."

---

**3.** Arthralgia is defined as "severe pain in a joint." *Stedman's Medical Dictionary*, Fifth

Lawyer's Edition, 1982.

*Ceballos, supra,* 649 F.Supp. at 702 (citing *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1045 (2d Cir. 1984)). Furthermore, the ALJ must affirmatively assist the plaintiff in developing the record, especially where the claimant is not represented by a lawyer. *Bluvband, supra,* 730 F.2d at 892; *see Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980).

The treating physician rule in the Second Circuit provides that "a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians." *Schisler, supra,* 787 F.2d at 81; *Bluvband, supra,* 730 F.2d at 892–93.

In *Bluvband,* the Court enunciated a third prong of the rule, holding "that there is no requirement that the [treating] physician's medical testimony be supported by objective clinical or laboratory findings" to be binding upon the fact-finder. *Bluvband, supra,* 730 F.2d at 893 (citations omitted). The *Schisler* court noted that Congress may have overruled this element of the rule in Section 3(a)(1) of the Reform Act which became law in 1984. *Schisler, supra,* 787 F.2d at 81–82 n. 2; *see* 42 U.S.C. § 423(d)(5)(A).[4] Courts have applied this third, *Bluvband* element *sub silentio* in some later cases. *Morales v. Bowen,* 664 F.Supp. 75, 78 (S.D.N.Y.1987); *Salvati v. Heckler,* 632 F.Supp. 1202, 1208 (S.D.N.Y. 1986). The Court has subsequently noted

that the amendments may have overruled this third prong in *Brandon v. Bowen,* 666 F.Supp. 604, 608 n. 5 (S.D.N.Y.1987), but it does not appear that any court has decided the question. It should be noted, for its bearing on the instant debate, that the language of § 423(d)(5)(A) may only mean that an "individual" claimant must support his disability claim with clinical and laboratory findings. It is not clear that the language places a similar burden upon a claimant's physician. However, in view of the ALJ's failure to fully develop the record and to give appropriate weight to portions of the record supportive of plaintiff's claim, it is unnecessary for the Court to reach at the present time the question of whether the third portion of the treating physician rule as stated in *Bluvband* remains valid in the Second Circuit.

It is probable, considering Dr. Washington's report and plaintiff's regular attendance at the Harlem Hospital clinic, that Dr. Washington was familiar with plaintiff's medical history and with any clinical or laboratory findings included in her Harlem Hospital records. But it is not clear from the record whether Dr. Washington was in fact plaintiff's regular treating physician. If Dr. Washington was not a treating physician then, of course, the treating physician rule does not render his medical opinion binding upon the ALJ. If Dr. Washington was plaintiff's treating physician, however, the ALJ erred in not substantiating his failure to endorse Dr. Washington's opinion that plaintiff "should not return to work." Then, insofar as the ALJ relies solely upon the opinions of other physicians

**4.** 42 U.S.C. § 423(d)(5)(A) reads in relevant part:

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other

symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

who did not themselves treat or even examine plaintiff, his reliance would be unfounded. "[T]he opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987).

In a case such as this, the ALJ must not only weigh the evidence but must assist the plaintiff affirmatively in developing the record. It may be true, as the Secretary contends, that "plaintiff was represented by Harlem Legal Services, which has considerable expertise in litigating Social Security Claims." But plaintiff's actual representative before the ALJ was a paralegal. The proceedings in cases involving social security benefits "are not designed to be adversarial." *Donato v. Secretary of Dept. of Health*, 721 F.2d 414, 418 (2d Cir.1983) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982)). "The Social Security Act is a remedial statute which must be 'liberally applied'; its intent is inclusion rather than exclusion." *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir.1979) (quoting *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975) (citation omitted)). The ALJ's duty to develop the comprehensive record requisite for an equitable determination of disability is greatest when claimant is unrepresented; but the duty still exists when plaintiff is represented and even more, as here, where plaintiff is represented at hearing by a paralegal.

The ALJ in the case before us did not adequately perform this duty. He neither questioned the plaintiff concerning Dr. Washington's status, nor requested an RFCA from Dr. Washington. And he did not attempt to obtain complete records on plaintiff from Harlem Hospital, even though the Secretary's own consultant, Dr. Richard Woronoff, stated that such records "would make documentation of [her] diagnosis much easier." The ALJ erred additionally in failing to address certain evidence favorable to the claimant such as Dr. Cohn's notation of plaintiff's inability to perform the stress test and other elements

of Dr. Cohn's report consistent with the findings of plaintiff's physician.

## CONCLUSION

This Court accordingly adopts the Magistrate's recommendation, reversing the Secretary's decision and remanding this matter to the ALJ for further proceedings consistent with the aforegoing. The ALJ should procure all hospital records not previously obtained, RFCA's from the treating as well as the consulting physicians and such further information from Dr. Washington as is necessary. The ALJ should then evaluate all the evidence to determine whether, in combination, plaintiff's medical conditions render her disabled.

SO ORDERED.