**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AURORA L. CHESTER,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 98-7106
(D.C. No. 97-CV-119)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Aurora Chester appeals the district court's order adopting the magistrate judge's findings and recommendations and affirming the final decision of the Commissioner of Social Security that she is not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d) and denying her claim for disability and supplemental security income benefits. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and reverse.

Claimant, then age forty-six, filed applications for benefits in 1993, claiming she was unable to work since April 15, 1992 due to chest pains, shortness of breath, neck pain, shoulder pain, headaches, stress, fatigue and depression. Her requests for benefits were denied initially and on reconsideration. She then received a hearing before an administrative law judge (ALJ), at which she and two medical experts testified.

The ALJ denied claimant's claims at step four of the evaluation sequence. *See generally Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). He concluded that claimant has severe impairments consisting of chest pains, shortness of breath, neck pain, shoulder pain, headaches, asthma, stress, fatigue and depression. However, he determined that she did not have a listed impairment or combination of listed impairments, and that she retained the residual functional capacity (RFC) to lift and carry ten pounds occasionally and twenty-five pounds frequently, to sit without restriction, to stand and walk for

-2-

six hours in an eight-hour day, limited to doing no overhead work and only occasional climbing in clean air environments at jobs in non-public settings involving the performance of simple, repetitive tasks, with limited contact with coworkers in a low stress environment. The ALJ determined that the exertional requirements of claimant's past relevant work as a home health care aide (which he described as a "homemaker") were not precluded by these limitations. He therefore concluded that claimant was not disabled. The Appeals Council denied review, making the ALJ's decision the final agency decision.

The district court, adopting the report and recommendation of the magistrate judge, affirmed the Commissioner's decision. We review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he correctly applied the relevant legal standards. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

On appeal, claimant contends the ALJ failed to perform the analysis required at all three phases of the step four determination. Step four of the sequential analysis, at which the ALJ found claimant not disabled, is comprised of three phases. "In the first phase, the ALJ must evaluate a claimant's physical and [RFC], . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work." *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996). "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. The burden of proving disability remains with the claimant at step four; however, the ALJ does have a duty "of inquiry and factual development." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)

I.

We first address claimant's contention that the ALJ failed to make a proper step four analysis at the second and third phase because he did not make specific findings regarding the demands of her past work and improperly relied on vocational expert testimony to make his conclusion that claimant's determined limitations did not preclude the requirements of her past relevant work as a home health care aide. *See Winfrey*, 92 F.3d at 1024-25 (requiring fact findings regarding past work and discouraging practice of delegating fact-finding responsibility to vocational expert). At the administrative hearing, claimant testified that she had worked from 1980 through April 1992 as a nurse's aide in various nursing homes. She also testified that, because she needed the money, she occasionally worked part time as an on-call nurse's aide and occasionally worked as a home health care worker in people's homes.

However, the ALJ failed to develop the record with "'factual information'" regarding the actual work demands of the claimant's past relevant work, and whether, given her physical and mental limitations, she could meet those demands. *See id.* at 1024. The ALJ did ask claimant what her nurse's aide work involved, *see* R. Vol. II at 33, but he did not inquire into the mental requirements of that job, nor did he ask her about the physical or mental requirements of her home health care work.

The ALJ's failure to inquire about the mental demands of her home health care work is particularly critical in this case. The psychiatrist called to testify about claimant's mental limitations, Dr. Bolter, testified that she suffered from a major depressive disorder characterized by appetite and sleep disturbance, psychomotor agitation, feelings of worthlessness, thoughts of suicide and hallucinations. *See id*. at 60-61. Claimant testified that she hears voices that sound like the devil which tell her someone is going to come and kill her or that something bad is going to happen. *See id*. 57-59. Dr. Bolter testified that claimant's ability to maintain social functioning was markedly reduced, and that she would only be able to work in a nonpublic setting, with simple, repetitive tasks, if the job was low-stress and she had no contact with co-workers. *See id*. at 62-63. When asked by the ALJ how claimant managed to work, Dr. Bolter opined that her jobs had "very minimal kind of social challenge involved, so she

barely squeaks by." *Id.* at 62. When the claimant was asked how she managed to do her home health care work if she hears voices, she gave a rambling response that indicated she was scared and nervous by the job and might potentially be a risk to her patients because of her mental limitations. *See id.* at 59.

The ALJ also failed to make any factual findings as to how claimant's impairments would relate to the actual demands of her work as a home health care aide. At the hearing, the ALJ asked the VE if he was familiar with claimant's physical and mental limitations as described by Dr. Bolter and the other medical expert who testified, and if the VE could assess those limitations in combination. *See id.* at 64. The ALJ never specified what these limitations were, nor did he give the VE any description of the work demands of claimant's past relevant work. In response, the VE merely gave his conclusory opinion that claimant could still function as a home health care aide with her limitations. *See id.*

In his written decision, the ALJ did identify claimant's functional limitations, but he never made any factual findings as to the physical and mental demands of her work as a home health care aide, nor did he make any factual findings comparing claimant's limitations to the demands of her past relevant work. The ALJ merely stated in his written decision that he concurred with the VE's opinion. *See id.* at 19. As we explained in *Winfrey*, the practice of delegating the ALJ's fact-finding responsibilities at step four to a VE is

discouraged because it is feasible for an ALJ to make specific findings about the limited jobs that qualify as a claimant's past relevant work. *See* 92 F.3d at 1025. An "ALJ may rely on information supplied by the VE at step four, [but] the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform [her] past relevant work." *Id*. Here, the ALJ merely adopted the conclusory opinion of the VE that claimant was not precluded from doing her past relevant work. "When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." *Id*.

Because we cannot reweigh the evidence, *see Castellano*, 26 F.3d at 1028, or make factual determinations on behalf of the ALJ, and because the ALJ's lack of specific findings here leaves us nothing to review, *see Winfrey*, 92 F.3d at 1025, we must reverse and remand for further proceedings.


II.

Having determined the necessity of remand, we turn to claimant's contention that the ALJ failed to evaluate properly her physical and mental RFC at the initial phase of the step four analysis because he erroneously discounted the opinion of a consulting psychiatrist, Dr. McCarthy. Dr. McCarthy diagnosed claimant as having had a major single depressive episode and gave her a "global assessment of functioning" (GAF) score of thirty, which indicates claimant's

"[b]ehavior is considerably influenced by delusions or hallucinations" or that she suffers from "serious impairment in communication or judgment" or that she has an "inability to function in almost all areas." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), (4th ed. 1994), p. 32.[1] Claimant claims the ALJ failed to consider Dr. McCarthy's opinion because he did not discuss Dr. McCarthy's GAF score.

It is clear from the record that the ALJ did not reject Dr. McCarthy's opinion, and, indeed, discussed her opinion in his decision. Although the ALJ did not specifically discuss Dr. McCarthy's GAF scores in his final written decision, the ALJ did indicate he had considered all of the evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). However, the ALJ may not use only portions of a report which are favorable to his decision, while ignoring other parts of the report. *See Smith v. Bowen*, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) ("Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical

---

[1]     A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id*. at 32.

testimony, he cannot pick and choose evidence that supports a particular conclusion." (citation omitted)).

Because the ALJ's discussion of Dr. McCarthy's opinion does not mention the GAF score of thirty, which does indicate a severe impairment, it is unclear whether the ALJ considered this aspect of the report, or rejected this evidence, favorable to claimant's position, without discussion. On remand, in addition to making the requisite findings regarding the demands of claimant's past relevant work and comparing her impairments with those demands, we direct the Commissioner to reconsider the evidence of claimant's mental impairments and to include an evaluation and discussion of Dr. McCarthy's GAF score. We note, however, that our intent here is not to dictate any result, but simply to assure "that the correct legal standards are invoked in reaching a decision based on the facts of this case." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the case is REMANDED with directions to

remand this case to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court


James E. Barrett
Senior Circuit Judge
