Damaso RIVERA, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 04 Civ. 6025(VM).

United States District Court,
S.D. New York.

July 28, 2005.

grants the Commissioner's motion and orders that the previous decision of the Commissioner be reversed and the case remanded for further proceedings subject to the conditions outlined herein.

## I. BACKGROUND[3]

### A. RIVERA'S ALLEGED DISABILITY

*DECISION AND ORDER*

MARRERO, District Judge.

*Pro se* plaintiff Damaso Rivera ("Rivera") filed this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g) (" § 405(g)"), for review of the final determination by the Commissioner of Social Security (the "Commissioner") denying Rivera's claims for social security disability insurance ("SSD") and Supplemental Security Income ("SSI") benefits on July 7, 2004.[1] The Commissioner moved on April 25, 2005, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for an order reversing the prior decision of the administrative law judge ("ALJ") and remanding the case for further proceedings before the Commissioner pursuant to the fourth sentence of § 405(g).[2] Rivera opposed remand by letter to the Court dated May 24, 2005. For the reasons discussed below, the Court

The record reflects that Rivera has suffered from severe chronic urethral stricture and severe meatus stenosis.[4] The invasive medical procedures required for treatment of his conditions and to enable Rivera to void have resulted in Rivera suffering from frequent, abnormal and painful urination as much as five times per hour. He has had up to six operations on his urethra, dating back to 1975, including a reconstructive circumcision, a meatotomy, a cystoscopy[5] and dilations concurrent with other procedures over the years. The most recent procedures reflected in the record of this action seem to have taken place in May 1999 under the care of Dr. Nicholas Romas, Urology Chairman at St. Luke's–Roosevelt Medical Center, and Dr. John Taylor, also practicing at that facility, where Rivera underwent a diagnostic retrograde urethrogram, a cystosco-

---

**1.** The Court considers the filing date to be July 7, 2004, the day it was received in the office of the *Pro se* clerk. *See Toliver v. County of Sullivan,* 841 F.2d 41, 42 (2d Cir.1988) ("At least where in forma pauperis relief is granted, the action should be treated as timely, provided the complaint was received in the clerk's office prior to the expiration of the limitations period."); *Lewis v. Nissan North America, Inc.,* No. 04 Civ. 562, 2004 WL 2093467, at *3 (S.D.N.Y. Sept.17, 2004).

**2.** The fourth sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." § 405(g).

**3.** The facts are derived from the administrative record ("R."), which was filed with the answer of the United States Attorney for the Southern District of New York (the "Government"). Except where necessary, the Court will not cite to the record any further.

**4.** Meatus is the "general term for an opening or passageway in the body." *Dorland's Illustrated Medical Dictionary ("Dorland's")* 996 (28th ed.1994).

**5.** A meatotomy is defined as an "incision of the urinary meatus in order to enlarge it." *Dorland's* 996. A cystoscopy is defined as "direct visual examination of the urinary tract with a cytoscope." *Id.* at 421.

py and a meatoplasty.[6] Afterward, Dr. Taylor informed Rivera that the procedures showed that he would need staged urethroplasty[7] and reconstructive surgery that would require a prolonged hospital stay and four to six weeks recovery, but the record does not reflect whether Rivera has undergone these procedures.

Rivera has also been diagnosed with Post–Traumatic Stress Disorder ("PTSD") associated with his medical condition. The record reveals that Rivera began to receive psychiatric care in February 2002, undergoing weekly psychotherapy. Rivera was being treated under the care of Reginald Murph ("Murph"), a therapist, and a psychiatrist, Dr. Andrzej Nikonorow, who prescribed Celexa.

At times throughout the period beginning in 1982 until December 2000, Rivera worked as a waiter. Specific information related to Rivera's periods of work, employers and earnings at each place of employment are not part of the administrative record.

## B. *PROCEDURAL HISTORY*

On December 13, 2001, Rivera applied for SSD and SSI benefits under Title II and Title XVI of the Act.[8] *See* 42 U.S.C. §§ 401, 1381. The Social Security Administration ("SSA") denied his claim both on initial review and on reconsideration.[9] Rivera requested a review of the denial of his application by an ALJ on April 5, 2002. The hearing took place on February 13, 2003. A paralegal from MFY Legal Services represented Rivera at the hearing. ALJ Wallace Tannenbaum conducted the hearing and questioned Rivera on his previous work experience as a waiter, focusing on the period between 1987 and 1990, and the period from September through December of 2000. He inquired about Rivera's medical conditions, including a brief discussion of Rivera's frequent need to void and also his psychiatric condition, and Rivera's daily activities. No other testi-

---

**6.** A meatoplasty is the "[e]nlargement or other surgical reconfiguration of [the urethral] meatus." *Stedman's Medical Dictionary* (*"Stedman's"*) 1074 (27th ed.2000).

**7.** Urethroplasty is the "surgical reconstruction of the urethra." *Stedman's* 1914.

**8.** There is some ambiguity related to whether Rivera applied for SSD and SSI benefits. Though the ALJ ultimately denied SSD and SSI benefits (R. at 20), the SSA's explanation, dated March 1, 2002, attached to the Disability Determination and Transmittal form related to the December 31, 2001 application, lists claims made for *SSI* benefits on March 19, 1985, July 7, 1995, January 22, 1996, May 31, 2001 and December 13, 2001. (R. at 25.)

**9.** Rivera had previously applied for benefits on March 19, 1985, July 7, 1995, January 22, 1996 and May 31, 2001. Each of these claims was denied. (R. at 25.) The ALJ also referred to applications filed on February 3, 2001 and May 31, 2001. The SSA considered Rivera's previous applications because of Riv-

era's designation as a member of the *Stieberger* class, a decision that required the SSA to review prior determinations. (R. at 25, 26); *see also Stieberger v. Sullivan*, 801 F.Supp. 1079, 1086 (S.D.N.Y.1992). Even though the SSA's Disability Determination and Transmittal form states that the "Stieberger period is 1/87—present" (R. at 25), the ALJ correctly readjudicated Rivera's claims dating back to 1985, since the *Stieberger* decision allowed claimants (1) who had a disability claim denied or terminated between October 1, 1981 and July 2, 1992 on the ground that the claimant was not disabled; (2) were New York State residents at the time of the denial or termination; and (3) had a disability claim denied or terminated at any level of review between October 1, 1981 and October 17, 1985, or at the ALJ or Appeals Council level between October 18, 1985 and July 2, 1992, to have their claims readjudicated. *See Stieberger*, 801 F.Supp. at 1086; *see also Surgeon v. Barnhart*, No. 04 Civ. 4424, 2005 WL 1397172 (E.D.N.Y. June 14, 2005) (finding *Stieberger* class membership for a period before October 18, 1985).

mony was offered at the hearing, though the paralegal asked some follow-up questions regarding Rivera's work as a waiter between 1985 and 1990 and at the end of 2000, as well as a few questions about his lack of a social life.

On March 26, 2003, ALJ Tannenbaum, finding that Rivera was not disabled, denied all of Rivera's claims for benefits. The ALJ based this decision on a finding that Rivera performed "significant and substantial gainful work as a waiter during the period beginning January 1, 1982 and continuing through December 31, 2000" and that, although the evidence demonstrated that Rivera suffered from a "serious urinary problem and mild depression" throughout the period beginning in 1982 until the date of the decision, Rivera had the "exertional capabilities" to work as a waiter, and he could return to such work.[10] (R. at 19–20.)

Rivera, supported by an attorney from Legal Services for New York City, appealed the ALJ's decision to the SSA's Appeals Council. Rivera alleged that the ALJ failed to fully develop the administrative record and that the ALJ failed to properly assess the nonexertional limitations of his impairment. On May 26, 2004, the Appeals Council denied Rivera's request to review the ALJ decision, finding no basis under its rules for such review. (*See* R. at 6.)

---

**10.** Despite the previously mentioned ambiguities in the record concerning whether the Commissioner considered Rivera's applications for SSD and SSI and for what period Rivera may have been disabled, the ALJ made a clear, ultimate determination:

It is the decision of the undersigned Administrative Law Judge that based upon the applications filed on December 13, 2000, June 5, 2001, May 31, 2001 and February 3, 2001 and previous applications January 22, 1996, July 7, 1995, July 19, 1995 and the Stieberger Class Court Action for the period beginning January 1, 1982 and continuing

Rivera filed his complaint with this Court on July 7, 2004. After a series of delays on the part of the Government due to a variety of factors, the Government finally responded by letter to the Court on March 30, 2005, stating that the Commissioner had completed her review and wanted to offer Rivera a remand for further administrative proceedings. The Court memo-endorsed the Government's letter, allowing that in the event the parties did not agree to a remand, the Government could move for remand by April 25, 2005. The Government alleged that it did not receive a response from Rivera regarding its offer of a remand, and moved the Court to remand the case on April 25, 2005 due to what the Government acknowledged to be an incomplete administrative record. By letter to the Court dated May 24, 2005, Rivera opposed the Government's motion to remand, expressing frustration with the delays in the resolution of his case, but failing to raise any legal arguments against the motion.[11]

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW FOR REMAND*

▮ Remand is the appropriate remedy when " 'there are gaps in the administrative record or the ALJ has applied an improper legal standard.' " *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999)

---

through May 20, 2002 the claimant is not entitled to a period of disability, or disability insurance benefits under section 216(I) and 223 respectively of the Social Security Act and is not eligible for Supplemental Security Income under sections 1602 and 1614(a)(3)(A) of the Act.

(R. at 20.)

**11.** In his letter of May 24, 2005, Rivera additionally requested unspecified equitable relief from the Court. The Court finds no basis for granting such relief to Rivera at this time.

(quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980). A reviewing district court should order a remand when it concludes that an ALJ determination to deny benefits was not supported by substantial evidence. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir.2004); *Pratts*, 94 F.3d at 39.

■■■ In considering whether the decision of the SSA was supported by substantial evidence, the reviewing court looks to whether the ALJ complied with his affirmative duty to fully develop the record. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996) (referring to 20 C.F.R. § 404.1512(d), the statute concerning SSD benefits).[12] The ALJ's obligation to fully develop the record is not limited to *pro se* cases, but applies even where, as here, the claimant was represented at the hearing by a paralegal. *See Perez*, 77 F.3d at 47; *Smith v. Bowen*, 687 F.Supp. 902, 906 (S.D.N.Y.1988) ("The ALJ's duty to develop the comprehensive record requisite for an equitable determination of disability is greatest when claimant is unrepresented; but the duty still exists when plaintiff is represented and even more ... where plaintiff is represented at hearing by a paralegal."). To that end, the ALJ must seek additional evidence or clarification when the "report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); *see also Rosa*, 168 F.3d at 79 (describing the ALJ's obligation to develop the record). If the ALJ failed to fulfill this duty, a reviewing district court

should reverse the Commissioner's decision and remand the appeal from the Commissioner's denial of benefits for further development of the evidence. If, on the other hand, the district court determines that there is substantial evidence of disability in the administrative record, it may decide to reverse the Commissioner's decision, make a determination of disability and remand solely for the calculation of benefits. Such a remedy is an extraordinary action and is proper only when further development of the record would serve no purpose. *See Rosa*, 168 F.3d at 83 (stating that when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision ... remand for a calculation of benefits" is appropriate).

■■■ Should the court, however, find that the Commissioner's decision was based on substantial evidence, the decision must be affirmed. This standard applies regardless of the existence of substantial evidence supporting the claimant's position or the reviewing court's disagreement with the Commissioner's findings of fact. *See Gonzalez ex rel. Gonzalez v. Barnhart*, No. 03 Civ. 6607, 2004 WL 1460634, at *2 (S.D.N.Y. June 28, 2004) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) and *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982)).

### B. *COMMISSIONER'S MOTION FOR REMAND*

The Commissioner seeks remand of this case to correct errors in the ALJ's adjudication of Rivera's claim. (Defendant's Memorandum of Law in Support of Motion for Remand, dated April 25, 2005 ("Def.Mem."), at 5.) Specifically, the Com-

---

**12.** The requirements to fully develop the administrative record are identical under both the provision concerning SSD and SSI bene-fits. *See* 20 C.F.R. §§ 404.1512(d), 416.912(d).

missioner argues that the ALJ failed to fully develop the administrative record, and that by not doing so, the ALJ reached a conclusion based on an incomplete record. The Commissioner further argues that there is not enough information in the record for the Court to adjudge Rivera disabled and remand solely for the calculation of benefits.

There is no significant distinction between the Commissioner's position and the position that Rivera took when first appealing the ALJ's determination to the Appeals Council. (*See* R. at 245–47.) Rivera appears to oppose the Commissioner's motion for remand solely because of her delay in determining his benefits and his desire for an immediate final determination on the issue. However, without substantial evidence in the administrative record to support a finding of disability, delay in proceedings alone does not justify a remand solely for the calculation of benefits. *See Bush v. Shalala,* 94 F.3d 40, 46 (2d Cir.1996). Consequently, the Court agrees with the Commissioner that a remand for further proceedings is appropriate to fully develop the administrative record. In particular, the ALJ failed to fully develop the record regarding Rivera's work history, his ability to work on a sustained basis as well as his functional capacity to perform substantial gainful activity based on his symptoms, and his psychiatric impairments. By the ALJ's not having fully developed the record, Rivera was denied a fair and adequate hearing. *See Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982).

1. *The ALJ Failed to Consider Rivera's Complete Work History and Did Not Fully Consider His Alleged Disability Prior to 2000*

The ALJ did not develop a complete record relating to Rivera's work history and alleged disability during the period from 1982 until 2000. Most notably, as admitted by the Government, without evidence in the record to support such a determination, the ALJ found that Rivera could not have been disabled during the 1982–2000 period because he performed substantial gainful activity. (*See* Def. Mem. at 7.)

Substantial gainful activity is work that is both substantial, meaning that the "work activity ... involves doing significant physical or mental activities" and is an activity that is done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. Demonstration of substantial gainful activity derives from an evaluation of an individual's earnings. *See* 20 C.F.R. §§ 404.1574, 416.974; *see also Thompson v. Sullivan,* No. 86 Civ. 5834, 1992 WL 380910, at *3 n. 2 (S.D.N.Y. Dec.4, 1992) (referring to earnings charts that govern the determination of substantial gainful activity). Rivera's earnings records are not part of the administrative record, nor did Rivera testify about his employment in anything but general terms. Though the ALJ briefly questioned Rivera about his employment, the discussion concerned only the years between 1987 and 1990. (R. at 252–54.) Consequently, the record does not reveal to what extent Rivera was employed during that period, or if he was employed at all between 1990 and 2000. On this point, the record demonstrates only that Rivera worked as a waiter continuously between September 2000 and December 2000. (R. at 258–60.) Nonetheless, the ALJ found that Rivera worked as a waiter for "the entire period of time beginning January 1, 1982 and continuing through at least December 21, 2000," and concluded on that

basis that Rivera was not disabled.[13] (R. at 19.) There appears to be no evidence in the record supporting this aspect of the ALJ's determination, and, thus, the ALJ's determination that Rivera was not disabled because he performed substantial gainful activity cannot be sustained. (*See* Def. Mem. at 8.)

### 2. *The ALJ Failed to Fully Develop the Record Concerning Rivera's Alleged Disabilities*

 The ALJ's failure to fully develop the facts surrounding Rivera's physical and mental ailments provides additional support for the Court's reversal of the ALJ's determination. To determine whether a claimant received a fair and adequate hearing, "a court must consider whether the ALJ adequately assisted the claimant in developing the record by asking questions regarding the disposition and extent of the claimant's subjective symptoms." *Mann v. Chater*, No. 95 Civ. 2997, 1997 WL 363592, at *4 (S.D.N.Y. June 30, 1997) (citing *Echevarria*, 685 F.2d at 755).

Here, the ALJ did not fully evaluate Rivera's subjective complaints concerning his frequent need to urinate, up to five times an hour (R. at 265), the pain he experiences (R. at 25, 107, 246) and what effect this would have on his ability to sustain employment. The ALJ missed his opportunity in the meager eighteen page hearing transcript to fully develop the record regarding the functional effects and nonexertional limitations of Rivera's impairment. *See, e.g., Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) (stating that a short record revealed "a host of lost opportunities to explore the facts"); *Hankerson v. Harris*, 636 F.2d 893, 894 (2d Cir.1980) (finding a sixteen page transcript of a hearing to be "quite brief").

As the Government argues and acknowledges, the ALJ should have evaluated whether Rivera's complaints were consistent with the medical evidence, especially since Rivera has severe impairments. (Def. Mem. at 6, 9.) *See* 20 C.F.R. §§ 404.1529(a), 404.1529(c)(3), 416.929(a),

---

**13.** Although not expressly stated by the ALJ, this determination suggests that the ALJ denied Rivera's application without considering the effects of his alleged disability. (*See* R. at 19.) The ALJ, representing the Commissioner, must follow a five step process in evaluating a disability claim. *See* 20 C.F.R. § 404.1520(a)(4) (process for SSD determination); 20 C.F.R. § 416.920(a)(4) (process for SSI determination). A finding of no disability at any one step ends the inquiry without proceeding to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first inquiry made by the ALJ is whether the claimant is currently engaged in substantial gainful activity. The ALJ's finding here that Rivera worked throughout the period of his alleged disability appears to have been the ending point of the ALJ's inquiry. If this is the case, the ALJ failed to consider step two, which is whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities; step three, which is whether the claimant suffers a "severe impairment" that is list-

ed in 20 C.F.R. pt. 404, app. 1 ("Appendix 1") of the regulations, creating a presumption of disability, *see* Extension of the Expiration Date for Several Body System Listings, 70 Fed.Reg. 35,028 (June 16, 2005) (effective date June 16, 2005); step four, which is reached only if the claimant's "severe impairment" is not listed in Appendix 1, under which the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform previous work the claimant performed; and step five, at which point, if the claimant is unable to perform past work, or has no previous work history, the ALJ ascertains whether there is other work that the claimant is capable of performing in light of the RFC. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Butts*, 388 F.3d at 380. An individuals's RFC is the ability to do sustained work-related activities in a work setting on a regular and continuing basis, considering related symptoms, such as pain, that may cause physical and/or mental limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

416.929(c)(3).[14] The ALJ also should have considered the nonexertional restrictions of Rivera's impairment. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e). Full consideration of these symptoms and complaints was necessary for the ALJ to determine the "total limiting effects" on Rivera's ability to perform substantial gainful activity. *See id.*

Second, the ALJ should have requested updated and detailed physician statements from Rivera's treating physicians, as those included in the record are outdated and incomplete. The only information from a current treating physician is a short note dated February 6, 2003 from Dr. Romas, who recommended three procedures under anesthesia "quickly" to treat severe meatus stenosis and urethral stricture. (R. at 218.) This short report does not reference how Rivera's condition might affect his ability to work. In addition, Dr. Paul Hochsztein's report was made at a time in 2003 when he was not sure if he had seen Rivera in over a decade. (R. at 239.)[15]

Finally, the ALJ did not fully develop the record regarding Rivera's psychiatric treatment. Rivera told the ALJ at the hearing that he was being treated by a therapist and taking medication prescribed by a treating psychiatrist. (R. at 263–64.) Murph and Dr. Nikonorow opined in July 2002 that Rivera "will be unable to fulfill any employment commitment at this time for a minimum of three months pending the outcome of his re-constructed surgery." (R. at 271.) The record does not reflect whether Rivera received this surgery, though Dr. Romas recommended three procedures under anesthesia in February 2003.[16] In addition, on February 13, 2003, Murph and Dr. Nikonorow reported that Rivera demonstrated symptoms associated with PTSD, "such as depressed mood, irritability, avoidance of close relationships and activity, in conjunction with intrusive distressing thoughts about the traumatic experience of past surgeries, and the anticipation of the surgical procedure he has to under go [sic] in the future. He also reports frequent urination that creates intense stress and anxiety." (R. at 236.) Rivera's affect was described as "intense anxious and moderately depressed." (R. at 237.) The mental health profession-

---

**14.** In pertinent part, the regulations provide: We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.... However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment (s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. §§ 404.1529(a), 416.929(a).

**15.** The record also contains an opinion by Dr. Cacciarelli which conflicts with RFC evaluations made by non-examining state agency medical consultants. (*See* R. at 99–114.) Clarification of these discrepancies presents one of the reasons supporting a remand of this action to determine if Rivera suffers from an impairment that prevents all work activity. Another medical opinion, dated June 20, 2001, from Dr. Finger, a diagnostic specialist of the New York State Office of Temporary and Disability Assistance ("OTDA"), an agency that provides Rivera with public assistance and that found him to be work exempt due to his medical condition, is not part of the record. (*See* R. at 67.)

**16.** The Court is not in a position to determine whether these were the procedures to which the psychiatrist had referred. (*See* R. at 218.)

als concluded that Rivera needed ongoing psychotherapy and psychopharmacological therapy. A separate psychiatric report undersigned by Murph opined that Rivera had a "marked" degree of impairment in his daily living activities and social functioning.[17] (R. at 241–44.) The report also revealed that Rivera had frequent deficiencies in concentration, persistence and pace, and that his condition had resulted in episodes of deterioration in work or work-like settings that could be expected to continue for at least twelve months at that level of severity. (R. at 242–43.) The report stated that most of the time, Rivera did not have the ability to make occupational adjustments "due to the psychological impact his urinary problem has had on him." (R. at 244.)

Despite the introduction of this evidence, and the three psychiatric evaluations that became part of the record, the ALJ found that Rivera was "rational, lucid, logical and [had] no thought disorders," that Rivera's "concentration, attention span and memory [were] good," that Rivera was "able to accept instruction and perform under normal work stress," and finally that Rivera's "depression [would] not interfere with all forms of work." (R. at 19.) These determinations were made without reference to the reports of the treating mental health professionals and have no basis in the evidence presented in the record. The ALJ's failure to develop the record concerning Rivera's physical and mental conditions, coupled with the lack of evidence supporting the ALJ's findings, warrants this Court's reversal and remand for additional proceedings.

In particular, the Court finds that, as part of the ALJ's duty to fully develop the record, on remand the ALJ must obtain more complete reports from Rivera's treating physicians.[18] *See Truesdale v. Barnhart,* No. 03 Civ. 0063, 2004 WL 235260, at *6–*7 (S.D.N.Y. Feb. 6, 2004) (finding that the ALJ had the duty to contact a treating physician to obtain detailed reports "describing plaintiff's diagnoses and physical/mental limitations, and how they affect his ability to perform various work-related activities."); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e) ("When the evidence we [, the SSA,] receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.").

3. *Remand for Further Evidentiary Proceedings and Complete Development of the Record is Necessary, but Shall Be Subject to a Time Limit*

The Court understands Rivera's desire to have a final determination granted as soon as possible and is equally "mindful of the 'often painfully slow process by which disability determinations are made.'" *Butts,* 388 F.3d at 387 (quoting *Carroll v. Secretary of Health & Human Servs.,* 705 F.2d 638, 644 (2d Cir.1983)). The Court recognizes that "'a remand for further evidentiary proceedings ... could result in substantial, additional delay.'" *Id.* (quoting *Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir.2000)). Nevertheless, the record does not contain substantial evidence to support

---

17. According to its use in the document, "marked" means that the "impairment seriously interferes with the ability to function independently, appropriately, and effectively." (R. at 242.)

18. Specifically, the Court agrees with the SSA's recommendation that a determination of disability depends on an evaluation of the functional effects of the symptoms of Rivera's impairments, which could impact his ability to perform his past work. (*See* Def. Mem. at 11–12.)

a sufficient finding of disability in favor of Rivera. In light of the delays Rivera has already experienced, however, the Court will suggest a time limit for the Commissioner to complete further proceedings, in accordance with 42 U.S.C. § 405(b)'s requirement that administrative hearings be held within a reasonable time. *See Heckler v. Day,* 467 U.S. 104, 111, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984). A proposed 120-day deadline will assure that Rivera receives benefits, if eligible, in a timely manner, and respects the properly restrained role of the courts in fashioning equitable remedies against the agencies of the United States. *See McClain v. Barnhart,* 299 F.Supp.2d 309, 330–31 (S.D.N.Y. 2004); *McClain ex rel. McClain v. Halter,* No. 99 Civ. 3236, 2001 WL 619177, at *2 (S.D.N.Y. June 5, 2001). Within ninety days, the Commissioner should report to the Court by letter copied to Rivera as to how the matter is proceeding.

### III. *ORDER*

For the reasons discussed above, it is hereby:

**ORDERED** that the motion of defendant Jo Anne B. Barnhart, Commissioner of Social Security (the "Commissioner"), to remand the claim of Damaso Rivera ("Rivera") for benefits under the Social Security Act for further proceedings consistent with this Order is hereby GRANTED; and it is further

**ORDERED** that the Commissioner is requested to complete such administrative proceedings and issue a final determination within one hundred twenty (120) days of the date of this Order. The Commissioner shall update the Court by letter, copied to Rivera, within ninety (90) days as to the progress made on resolving Rivera's claim.

The Clerk of the Court is directed to close this case, subject to its being reopened for the purpose of enforcement of this Order and any future proceedings required in this Court with respect to Rivera's application.

**SO ORDERED.**