ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Michelene Insalaco ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 17; Dkt. 22), and Plaintiff's reply (Dkt. 23). For the reasons discussed below, Plaintiff's motion (Dkt. 17) is granted in part, the Commissioner's motion (Dkt. 22) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her application for DIB on November 18, 2015. (Dkt. 7 at 149, 163).[1] In her application, Plaintiff alleged disability beginning September 30, 2015, due to stage III breast cancer, depression, anxiety, and Wolf Parkinson White syndrome. (Id. at 150, 163). Plaintiff's application was initially denied on February 12, 2016. (Id. at 163, 184-89). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird in Buffalo, New York, on June 23, 2016. (Id. at 97-148, 163). On September 9, 2016, the ALJ issued an unfavorable decision. (Id. at 160-71). Plaintiff requested Appeals Council review; on November 30, 2016, the Appeals Council granted Plaintiff's request and remanded the case to the ALJ. (Id. at 178-82). A second hearing was held before the ALJ in Buffalo, New York, on March 7, 2017. (Id. at 22, 44-96). On June 26, 2017, the ALJ issued an unfavorable decision. (Id. at 19-35). Plaintiff requested Appeals Council *405 review; her request was denied on November 16, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 8-11). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Bowen v. City of New York, 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 404.1520(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to *406 the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2020. (Dkt. 7 at 24). At step one, the ALJ determined that Plaintiff engaged in substantial gainful work activity from January 3, 2017, through at least the date of the March 7, 2017 administrative hearing. (Id. ). However, the ALJ further concluded that there was a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity. (Id. at 25).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "stage III breast cancer with chemotherapy induced neuropathy ; Wolf Parkinson White syndrome ('WPW'); lumbago; obesity ; borderline personality disorder ; and adjustment disorder." (Id. ). The ALJ further found that Plaintiff's medically determinable impairment of right lateral femoral cutaneous nerve paresthesia was non-severe. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. ). The ALJ particularly considered the criteria of Listings 1.04, 4.05, 13.10, 12.04, and 12.08 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (Id. at 25-26).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff:
could lift and carry 20 pounds occasionally, 10 pounds frequently, sit for six hours in an eight-hour workday and stand or walk for four hours in an eight-hour workday. [Plaintiff] is limited to no use of foot controls with the right foot; no climbing of ladders, ropes or scaffolds; no crawling; occasional climbing of ramps or stairs, balancing, kneeling crouching; and frequent stooping. She is limited to frequent handling of objects bilaterally and frequent fingering of objects bilaterally. [Plaintiff] could tolerate no direct exposure to chemicals, no concentrated exposure to irritants such as odors, fumes, dusts, gases and poor ventilation and no exposure to hazards such as unprotected heights or moving machinery. She could perform work limited to simple, routine tasks that could be learned after a short demonstration or within 30 days with no production rate or pace work and with no driving of a vehicle or no travel to unfamiliar places.
(Id. at 27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 33).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of office helper, mailroom clerk, *407 and ticket taker. (Id. at 33-34). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 34-35).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ failed to consider Plaintiff's excessive absenteeism; (2) in rejecting the opinions of physicians in the record, the ALJ improperly substituted his judgment for that of the physicians; (3) the ALJ failed to give good reasons for rejecting the opinions of Plaintiff's treating physicians, Ronald J. Bauer, M.D. and Jennifer Hydeman, Ph.D.; and (4) the ALJ failed to properly assess Plaintiff's "symptom intensity." (Dkt. 17-1 at 1). In her reply brief, Plaintiff raises another argument; that is, the ALJ failed to identify and resolve a conflict between the VE testimony and the Dictionary of Occupational Titles. (Dkt. 23 at 8). For the reasons set forth below, the Court finds that the ALJ erred in evaluating the opinion evidence of Dr. Bauer, and that this error necessitates remand for further administrative proceedings.
A. Assessment of Treating Physician Opinions
Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin, 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons" ' for the weight given to a treating source opinion." (quoting Halloran, 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific ...." Harris, 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions *408 from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. Plaintiff contends that the ALJ's failure to properly evaluate opinion evidence requires remand for the ALJ to properly evaluate the opinions of Plaintiff's treating physicians, including Dr. Bauer and Dr. Hydeman. (See Dkt. 17-1 at 24).
Plaintiff began treating with Dr. Bauer, a surgeon, in November 2015. (Dkt. 7 at 359). Dr. Bauer completed a functional assessment on April 25, 2016. (Id. at 358-59). Dr. Bauer had last examined Plaintiff in March 2016, only one month prior to completing the assessment. (Id. at 359). Dr. Bauer found that Plaintiff had no limitations for sitting, seeing, hearing, or speaking. (Id. ). Plaintiff was "moderately" limited in her ability to walk, stand, and use her hands. (Id. ). Plaintiff was "very limited" in her ability to perform lifting, carrying, pushing, pulling, bending, and in doing stairs or other climbing. (Id. ). Dr. Bauer explained that Plaintiff had severe impairments that were expected to last for at least twelve months due to the fact that she was "undergoing chemotherapy with severe side effects and now is undergoing surgery that will have post op limitations." (Id. ).
The ALJ gave "limited weight" to Dr. Bauer's opinion that Plaintiff is "very limited" in "lifting, carrying, pushing, pulling, bending and in stairs or other climbing." (Dkt. 7 at 32). The ALJ explained that Dr. Bauer's report does not define the meaning of "very limited," which rendered his assessment "not particularly helpful." (Id. ). Further, the ALJ noted that Dr. Bauer completed the assessment while Plaintiff was undergoing chemotherapy, "during which her condition was presumably its worst but had improved significantly several months later." (Id. ). The ALJ elaborated that "[e]ven while undergoing chemotherapy, claimant reported to Dr. Zali, that she was independent with dressing and bathing, grooming, cooking, cleaning, doing laundry, shopping, managing money and driving." (Id. ). The RFC, which requires Plaintiff to lift and carry twenty pounds occasionally and ten pounds frequently, occasionally climb ramps or stairs, and frequently stoop, appears to conflict with Dr. Bauer's opinion that Plaintiff is "very limited" in her ability to lift, carry, bend, and do stairs or other climbing.[2]
Because the ALJ did not afford controlling weight to Dr. Bauer's opinion, he was required to consider certain factors - including the frequency of examination and the length, nature, and extent of the treatment relationship; the evidence in support of Dr. Bauer's opinion; the consistency of Dr. Bauer's opinion with the record as a whole; whether Dr. Bauer is a specialist; and any other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion - in determining what weight to afford Dr. Bauer's opinion. Halloran, 362 F.3d at 32. The ALJ did not explicitly discuss these factors in the written determination, nor is it apparent to the Court that the ALJ
*409 considered these factors when evaluating Dr. Bauer's opinion.
For example, the written determination does not discuss that Plaintiff began seeing Dr. Bauer in November 2015, soon after her cancer diagnoses in September 2015, and six months before Dr. Bauer assessed her functional limitations. Therefore, Dr. Bauer would have been familiar with the scope of Plaintiff's medical conditions and the extent of her limitations. See Schisler v. Heckler, 787 F.2d 76, 81 (2d Cir. 1986) (the opinion of a treating physician is entitled to some extra weight because "the treating physician is usually more familiar with a claimant's medical condition than are other physicians[.]"). Likewise, the ALJ failed to consider Dr. Bauer's surgery specialty. Dr. Bauer's specialty was important in his ability to assess her limitations, given that Plaintiff underwent a mastectomy - performed by Dr. Bauer - as a part of her cancer treatment. (See Dkt. 7 at 815, 824). Dr. Bauer's April 2016 opinion specifically states that Plaintiff's surgery would cause post-operative limitations. (See id. at 359). Nor does the written determination discuss the evidence supporting Dr. Bauer's opinion, or the consistency of Dr. Bauer's opinion with the record as a whole.
The Court is cognizant that an ALJ is not required to engage in a "slavish recitation" of each of the above-mentioned factors. See Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013). However, in this case, it is not apparent from the written determination that the ALJ considered any of the requisite factors in determining the weight to be afforded to Dr. Bauer's opinion. This was error. See Medina v. Comm'r of Soc. Sec. , No. 13-CV-2323 (KAM), 2016 WL 4402010, at *17, 2016 U.S. Dist. LEXIS 109992, at *55 (E.D.N.Y. Aug. 18, 2016) (remand required where "[t]he ALJ erred by failing to expressly consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treating relationship, and the specialization of the treating physician."); see also Giambrone v. Colvin, No. 15-CV-05882 (PKC), 2017 WL 1194650, at *17, 2017 U.S. Dist. LEXIS 48039, at *47 (E.D.N.Y. Mar. 30, 2017) (remand required where ALJ failed to acknowledge or consider consistency between findings of treating source and those of other sources).
Further, the ALJ failed to give "good reasons" for discounting the opinion of Dr. Bauer. One of the reasons identified by the ALJ for affording less than controlling weight to Dr. Bauer's opinion - that Plaintiff was undergoing chemotherapy at the time Dr. Bauer completed the April 2016 assessment and she improved thereafter - is not a "good reason," when examined in light of the entire record. The other opinion evidence in the record relevant to Plaintiff's physical limitations was offered by Donna Miller, D.O. (See Dkt. 7 at 668-71). Dr. Miller opined that Plaintiff had mild to moderate limitations for heavy lifting, bending, carrying, reaching, pushing, and pulling. (Id. at 671). The ALJ gave Dr. Miller's opinion "some weight," as his opinion was "generally consistent with the claimant's treatment history," and because Dr. Miller's "objective findings on physical examination ... generally support his conclusion." (Id. at 32). Like Dr. Bauer's opinion, Dr. Miller's assessment appears to have been completed at the time Plaintiff was undergoing chemotherapy. (See id. at 668 ("She states presently she is in chemotherapy.") ). However, the ALJ did not find that Plaintiff's chemotherapy treatment somehow exacerbated the results of Dr. Miller's assessment. In other words, the ALJ's presumption regarding the effect of Plaintiff's chemotherapy on her physical functional limitations is inconsistently applied across the opinion *410 evidence in the record, and it therefore cannot constitute a good reason for discounting the opinion of Dr. Bauer.
The other reason given by the ALJ for discounting the opinion of Dr. Bauer is that his assessment does not define the meaning of the term "very limited," rendering the assessment "not particularly helpful." (Id. at 32). Dr. Bauer found that Plaintiff was "very limited" in several areas of functioning - including lifting, carrying, pushing, pulling, bending, and in doing stairs or other climbing. Given that Dr. Bauer found Plaintiff to be "very limited" in three of eight areas of physical functioning, and the only other opinion evidence relevant to Plaintiff's physical functional limitations was from a consultative examiner, who did not have the benefit of Plaintiff's treatment history, the ALJ should have re-contacted Dr. Bauer to gain clarification on the meaning of the term "very limited." In other words, the ALJ's finding that almost half of the functional limitations identified by Dr. Bauer were vague, or "not particularly helpful," creates a gap in the record that the ALJ was required to develop. See Fontanez v. Colvin , No. 16-CV-01300 (PKC), 2017 WL 4334127, at *25, 2017 U.S. Dist. LEXIS 160048, at *77-78 (E.D.N.Y. Sept. 28, 2017) ("Additionally, the ALJ failed to develop the record with respect to Dr. Navarro's medical opinion and assessment of Plaintiff's functional limitations. To the extent the ALJ found Dr. Navarro's opinion vague and in need of further explanation, the ALJ should have sought additional information and clarification from Dr. Navarro."); see also Page v. Colvin, No. 15-CV-792 (KNF), 2015 WL 9660016, at *5, 2015 U.S. Dist. LEXIS 174058, at *17 (S.D.N.Y. Dec. 10, 2015) ("vagueness alone does not constitute [a] 'good reason' not to give Dr. Cope's opinion controlling weight given the ALJ's duty to develop the record to obtain clarifying information concerning any issue that was vague in Dr. Cope's opinion.").
In sum, the ALJ's analysis of Dr. Bauer's opinion did not comport with the treating physician rule, and he failed to give good reasons for not affording Dr. Bauer's opinion controlling weight. On remand, the ALJ should consider Dr. Bauer's opinion in light of the treating physician rule and, if necessary, take steps to re-contact Dr. Bauer to gain clarification of his opinion.
B. Plaintiff's Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23, 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted, 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015). Accordingly, Plaintiff's request that the Court consider the new argument raised in her reply brief, and that Defendant be afforded additional time to submit a sur-reply, is denied as moot.
*411 CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 17) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion (Dkt. 22) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Dr. Bauer's opinion that Plaintiff is moderately limited in her ability to stand and walk arguably is consistent with the ability to perform a range of light work. See Ayala v. Berryhill, No. 18CV124 (VB)(LMS), 2019 WL 1427398, at *8, 2019 U.S. Dist. LEXIS 40803, at *28 (S.D.N.Y. Mar. 12, 2019) ("courts have upheld RFC determinations of light work where medical opinions found that plaintiffs had mild to moderate limitations in sitting, standing, and walking."); Burch v. Comm'r of Soc. Sec. , No. 17-CV-1252P, 2019 WL 922912, at *6, 2019 U.S. Dist. LEXIS 30485, at *17 (W.D.N.Y. Feb. 26, 2019) ("the ALJ restricted [the plaintiff] to the exertional requirements of light work, a limitation consistent with the moderate limitations assessed by the physicians and the evidence in the record.").